**In the Matter of the Complaint of the BETHLEHEM STEEL CORPORATION, etc.**

**Civ. A. No. C75–104.**

United States District Court,
N. D. Ohio, E. D.

April 22, 1976.

John H. Hanninen, Ray, Robinson, Keenen & Hanninen, Cleveland, Ohio, for Bethlehem Steel Corp.

Thomas O. Murphy, Thompson, Hine & Flory, Cleveland, Ohio, for claimants.

## MEMORANDUM AND ORDER

KRUPANSKY, District Judge.

This is a maritime action wherein plaintiff, Bethlehem Steel Corporation, asserts its statutory right, pursuant to 46 U.S.C. §§ 183 *et seq.*, as amended, to limitation of liability on claims arising from the collision of its vessel, the Steamer Steelton, with Bridge No. 12 in the course of the ship's passage through the Welland Canal of the St. Lawrence Seaway. The maritime and admiralty jurisdiction of this Court is properly invoked pursuant to 28 U.S.C. § 1333.

Briefly stated, the facts relating to this action are as follows. The Steelton is a steamship owned and operated by plaintiff, a corporation duly organized and existing under the laws of the State of Delaware. On August 25, 1974, while proceeding through the Welland Canal on a voyage from Buffalo, New York to Contrecoeur, Quebec, Canada, the Steelton collided with Bridge No. 12, a vertical lift highway bridge spanning the Welland Canal, causing extensive damage to both the vessel and the bridge. As a result of this collision, which occurred wholly within the territorial boundaries of Canada, Bridge No. 12 was destroyed and the debris obstructed the Welland Canal, preventing vessels from traversing this waterway at that location.

On September 26, 1974, plaintiff filed an action in the Federal Court of Canada, for limitation of liability under Canadian law against the St. Lawrence Seaway Authority and all other persons having claims against plaintiff and the Steamer Steelton. Pursu-

ant to the Canada Shipping Act, the Federal Court of Canada limited plaintiff's liability and ordered plaintiff to pay into that court the amount of $671,489.09 in Canadian dollars, plus interest to the date of deposit. On November 1, 1974 plaintiff deposited with that court the amount of $680,733.56 in Canadian dollars, including interest, ($691,761.44 in United States dollars).

In addition to those actions filed in the Federal Court of Canada, a number of actions were filed against plaintiff in this Court. Plaintiff thereafter filed in this Court a Complaint, pursuant to Rule 9(h), Fed.R.Civ.P., Rule F., Supplemental Rules for Certain Admiralty and Maritime Claims, and 46 U.S.C. § 185, petitioning this Court for limitation of liability, while claiming the benefit of the lesser limitation provided by the Canada Shipping Act.

Subsequent to the filing of an *ad interim* stipulation for value and a surety deposit in the sum of $850,000.00, with interest, (the limit of liability under 46 U.S.C. § 183) this Court issued, on February 6, 1975, a Monition ordering all persons or corporations claiming damages for any and all losses resulting from the aforesaid collision, to file their respective claims and answers with the Clerk of this Court on or before March 10, 1975, (later extended to April 11, 1975). The Court further enjoined the institution and prosecution of any and all suits, actions or legal proceedings in any court whatsoever situated, arising as a result of the aforesaid collision, except in this proceeding for limitation of liability against plaintiff or against the Steamer Steelton, other than the proceeding already commenced in the Federal Court of Canada, Trial Division, Ottawa, Canada, Case No. T–3418–74. Upon the Motion of plaintiff, the matter was subsequently brought to a hearing before this Court to determine the applicable law governing the limitation of liability, to wit: the Law of Canada, i. e. the Canada Shipping Act, Sections 647, *et seq.,* as amended, or the law of the United States, i. e. an Act of Congress of March 3, 1851, 46 U.S.C. §§ 183 *et seq.,* as amended.

It is a well-settled principle that "in the absence of some overriding domestic policy translated into law, the right to recover for a tort depends upon and is measured by the law of the place where the tort occurred," the *lex loci delicti commissi. Black Diamond S. S. Corporation v. Robert Stewart & Sons (Norwalk Victory),* 336 U.S. 386, 396, 69 S.Ct. 622, 627, 93 L.Ed. 754 (1949). *See, Cuba Railroad Company v. Crosby,* 222 U.S. 473, 32 S.Ct. 132, 56 L.Ed. 274 (1912); *Slater v. Mexican National Railroad Company,* 194 U.S. 120, 24 S.Ct. 581, 48 L.Ed. 900 (1904); *Petition of Chadade Steamship Co., Inc. (Yarmouth Castle),* 266 F.Supp. 517 (S.D.Fla.1967). Since the collision of the Steelton with Bridge No. 12 occurred within a Canadian waterway, the rights and liabilities of the parties arising as a consequence of that collision are governed by the law of Canada.

It is equally well settled that even "where the rights of the parties are grounded upon the law of jurisdictions other than the forum, . . . the forum will apply the foreign substantive law, but will follow its own rules of procedure." *Bournias v. Atlantic Maritime Co., Ltd.,* 220 F.2d 152, 154 (2d Cir. 1955). The Canada Shipping Act defines not only the rights and liabilities of parties resulting from maritime collisions, but also provides specific remedies as well as procedures for invoking and implementing these remedies. Plaintiff, in seeking the lesser monetary limitation provided by Canadian law, asserts that the Canada Shipping Act, in its entirety, governs the action now before this Court, and in particular, that the Canadian provisions for limitation of liability must apply as a part of the substantive law of Canada. It is the contention of the claimants, on the other hand, that while Canadian law, the *lex loci delicti,* governs the rights of the parties arising as a result of the collision, it is the law of the forum, the *lex fori,* that governs matters of remedy and procedure, including limitation of liability.

Prior to the decision of the Supreme Court of the United States in *Black Diamond, supra,* it appeared to be settled that statutes limiting the liability of vessel own-

ers in maritime collision actions were procedural and the law of the forum controlled. *See, Oceanic Steam Navigation Company, Limited v. Mellor (Titanic),* 233 U.S. 718, 34 S.Ct. 754, 58 L.Ed. 1171 (1914); *The Scotland,* 105 U.S. 24, 26 L.Ed. 1001 (1881); *In Re State Steamship Company (State of Virginia),* 60 F. 1018 (E.D.N.Y.1894).

The weight of authority in our courts seems to be that, while the rights and liabilities of the parties will be determined in accordance with the law of the foreign country, the right to limit liability will be controlled by the limited liability statute of our country, which will be applied to foreign ships and foreign collisions. (Citations omitted). *Royal Mail Steam Packet Company v. Companhia De Navegaco Lloyd Brasileiro,* 31 F.2d 757, 758 (E.D.N.Y.1928), *aff'd,* 55 F.2d 1082 (2d Cir.), *cert. denied,* 287 U.S. 607 [53 S.Ct. 11, 77 L.Ed. 528] (1932).

■■■ Thereafter, the Supreme Court, in *Black Diamond,* modified its former pronouncements, announcing therein, that if the foreign limitation *"attaches"* to the right created under the foreign law, then the foreign limitation governs, notwithstanding the existing remedies of the forum. *Black Diamond, supra,* 336 U.S. at 395, 69 S.Ct. 622. *See, Petition of Chadade Steamship Co., Inc. (Yarmouth Castle), supra; Berkwitz v. Humphrey,* 130 F.Supp. 142 (N.D.Ohio 1955); 3 *Benedict on Admiralty* § 17 (7th ed. 1975). In applying its pronouncements to the facts and circumstances of that case, the Court noted additionally:

If, on the other hand, the Convention merely provides procedural machinery by which claims otherwise created are brought into concourse and scaled down to their proportionate share of a limited fund, we would respect the equally well settled principle that the forum is not governed by foreign rules of procedure. *Black Diamond, supra,* 336 U.S. at 396, 69 S.Ct. at 627.

The Supreme Court thereupon directed the District Court to conduct an inquiry to initially determine the substantive or procedural nature of the foreign limitation of liability.

It is important to add, moreover, that the question of what law governs the substantive limit of liability should be determined . . . in advance of the proof of individual claims. A proceeding to limit liability is ipso facto a proceeding to limit recovery, and the amount of the applicable limit, like the value of the vessel and freight, is a question affecting the magnitude of the res from which recovery is sought. It is a question, therefore, which lies at the threshold of all claims, is equally relevant to all, and should accordingly be disposed of before any. Id. at 397–398, 69 S.Ct. at 628.

*See, Petition of Chadade Steamship Co., Inc. (Yarmouth Castle), supra.*

Applying the Supreme Court ruling in *Black Diamond,* a hearing was convened in this Court to establish and prove the relevant Canadian law in accordance with Rule 44.1, Fed.R.Civ.P. During the course of the hearing, the Court entertained the testimony of witnesses for both parties who, as licensed, erudite Canadian barristers, distinguished in the area of admiralty law, expressed opinions upon the issue presented for resolution. Although their conclusions differed on the point in issue, the experts were in accord as to the complete absence of legal precedent defining the limitation of liability provision of the Canada Shipping Act as substantive or procedural, and conceded that no Canadian case authority existed which was dispositive of the issue. Nor has the independent research of this Court disclosed existing American legal precedent resolving the controversy.

The Court's attention was, however, directed to certain conflict of laws principles regarding damages. As noted by the English treatise, Dicey & Morris, *Conflict of Laws,* (9th ed. 1973):

Although there are dicta to the effect that damages depend on the *lex fori,* it now seems clear that the law relating to damages is partly procedural and partly substantive. A distinction must be drawn between remoteness and heads of

damage, which are questions of substance governed by the *lex causae,* and measure or quantification of damages, which is a question of procedure governed by the *lex fori.* The former includes the question in respect of what items of loss the plaintiff can recover compensation. The latter includes the method to be used in assessing the monetary compensation which the defendant must pay in respect of those items of loss for which he is liable. Id. at 1102.

In distinguishing between the substantive and procedural elements of damages, Great Britain's House of Lords, speaking through Lord Guest, stated in *Boys v. Chaplin,* [1971] A.C. 356:

> There would appear to be a distinction between questions affecting heads of damages which are for the lex loci delicti and quantification of damages which is for the lex.fori. This is well illustrated in Dicey and Morris, *Conflict of Laws,* 8th ed., p. 944, where the kind of damage is a matter of substantive law and the method of compensating the plaintiff for his loss which is for the lex fori (ibid. p. 1092). *Cheshire on Private International Law,* 7th ed., p. 602, is to the same effect. Id. at 381, 382.

Although, as noted by one of the Canadian witnesses, opinions of the House of Lords of Great Britain are, since 1949, no longer binding upon the courts of Canada, English precedent is, nonetheless, persuasive law relied upon by Canadian courts.

Beyond its precedential value in Canada, however, the analysis of Lord Guest in *Boys v. Chaplin,* as well as that of Dicey & Morris, is most appealing in light of the Supreme Court opinion in *Black Diamond.* The two decisions complement one another in exploring the substantive/procedural dichotomy enveloping the issue of limitation of damages, and the principles embraced therein should be applied concomitantly.

Therefore, if the limitation of liability provisions of the Canada Shipping Act are found to limit the individual claimant's right to recover certain categories of damages, (heads of damage), then the provisions are substantive. Since, under these circumstances, the limitation would attach to and specifically qualify the right created by the Canada Shipping Act, the Canadian limitation would be enforced by this Court, in accordance with the Supreme Court holding in *Black Diamond.* Conversely, if the Canadian law serves only to measure or quantify damages, then the limitation of liability provisions of the Canada Shipping Act would be deemed procedural and would not attach to the rights created by the Act. In this event, the law of the forum, i. e. 46 U.S.C. §§ 183 *et seq.,* would control and determine the monetary limitation of liability.

The relevant portions of the Canada Shipping Act, §§ 647(2)(e) and (f), provide:

> (2) The owner of a ship, whether registered in Canada or not, is not . . . liable for damages beyond the following amounts, namely,
>
> \*     \*     \*     \*     \*     \*
>
> (e) in respect of any loss of life or personal injury, either alone or together with any loss or damage to property or any infringement of any rights mentioned in paragraph (d), an aggregate amount equivalent to 3,100 gold francs for each ton of that ships tonnage;  and
>
> (f) in respect of any loss or damage to property or any infringement of any rights mentioned in paragraph (d), an aggregate amount equivalent to 1,000 gold francs for each ton of that ship's tonnage.

Upon thorough review of the Canada Shipping Act, §§ 647 *et seq.,* the pleadings and oral arguments of counsel, and the testimony of the expert witnesses, the Court is constrained to conclude, along with the learned expert witness for the claimants, that the limitation of liability provisions of the Canada Shipping Act are procedural and do not attach to the rights created by that Act.

The limitation provisions of the Canada Shipping Act are obviously designed to establish a fund against which the aggregate claims may be proportionally charged. Ap-

plying, by analogy, the language of the Supreme Court in *Black Diamond* to the Canada Shipping Act, the Act "merely provides procedural machinery by which claims otherwise created are brought into concourse and scaled down to their proportionate share of a limited fund . . . ." Sections 647(2)(e) and (f) merely quantify the limit of that fund.

Other portions of the Act, notably §§ 647(2)(a), (b), (c) and (d), do, however, qualify the rights created by the Act by specifically limiting the claimants' recovery, as subsequently quantified, to certain factual circumstances of tortious injury to persons or property. These provisions relate to heads of damage and are substantive, in contrast to §§ 647(2)(e) and (f).

Accordingly, the specific limitation of liability provisions of the Canada Shipping Act being procedural in nature, the law of the forum, namely 46 U.S.C. §§ 183 *et seq.*, shall determine the maximum limitation of the fund created in the action before this Court.

IT IS SO ORDERED.