**In the Matter of the Complaint of GEO- PHYSICAL SERVICE, INC., and Texas Instruments, Inc., in Respect of the Oceanographic Research Vessel M/V ARCTIC EXPLORER, its Engines, Tackle, etc., in a Cause of Exoneration from or Limitation of Liability.**

Civ. A. No. 81–3381.

United States District Court, S.D. Texas, Houston Division.

May 8, 1984.

Eugene J. Silva, Vinson & Elkins, Houston, Tex., for petitioners.

Newton B. Schwartz, Houston, Tex., for respondents.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

McDONALD, District Judge.

### Introduction

This cause came on to be heard with the filing of Petitioners' Motion for Partial Summary Judgment pursuant to Rule 56 and Motion to Dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure. Respondent filed a Motion to Dismiss and Cross-Motion for Summary Judgment pursuant to Fed.R.Civ.P., Rules 12 and 56. This action was filed on December 31, 1981, by Petitioners Geophysical Service, Inc. (hereinafter "GSI") and Texas Instruments, Inc. (hereinafter "TI") for exoneration from or limitation of liability pursuant to the American Limitation of Liability Act, 46 U.S.C. § 181 *et seq.* (hereinafter "Limitation Act") and the Canadian Limitation of Liability Statute and the Canadian Shipping Act § 647 et seq. (hereinafter "Limitation Statute"). Petitioners filed this action to consolidate the various suits filed against them arising out of the sinking of the Canadian-flagged vessel, M/V ARCTIC EXPLORER (hereinafter ARCTIC EXPLORER), and seek the dismissal of the consolidated claims on the basis of *forum non conveniens.*

On January 21, 1983, the above-entitled and numbered cause was called for a hearing before this Court to consider the Petitioners' and Claimants' outstanding motions. Based upon a review of the record and the applicable law, this Court renders judgment for the Petitioners and enters the following Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

### Findings of Fact

1. GSI is a subsidiary of TI both of which are incorporated under the laws of

Delaware, having their principal place of business in Dallas, Texas. Although GSI's domestic headquarters is located in Dallas, Texas, the company engages in geophysical survey work throughout the world. In Canada, GSI has offices in Calgary, Alberta; Dartmouth, Nova Scotia; and St. John, Newfoundland. Carino Company, Ltd., the owner of the ARCTIC EXPLORER, but not a party to this litigation, is incorporated under the laws of the Province of Nova Scotia, Canada, having its principal place of business in St. John, Newfoundland, Canada.

2. Prior to her sinking, the ARCTIC EXPLORER was an oceanographic research vessel of Canadian registry, Official No. 345866, built in 1974 in Kristiansand, Norway, and home ported in St. John, Newfoundland, Canada.

3. In late 1974, GSI negotiated with Carino in Norway for the charter of the ARCTIC EXPLORER. In early 1975, Carino chartered the ARCTIC EXPLORER to GSI pursuant to a time charter agreement for the exclusive purpose of conducting marine oceanographic geophysical surveys. The Time Charter Agreement between Carino and GSI was amended on September 9, 1980. The vessel remained under charter to GSI from 1975 until the sinking of the vessel, except for periods of time when it was returned to Carino for seal hunting.

4. Pursuant to the terms of the time charter agreement, Carino provided a minimum crew complement of six seamen, consisting of a captain, mate, chief engineer, second engineer and two able-bodied seamen. (Time Charter of M/V ARCTIC EXPLORER, Clause 1.2). In addition to being responsible for crewing the vessel, Carino also maintained and operated the vessel, warranting her seaworthiness and maintaining her classification.

5. Based upon a review of the daily activity reports from the geophysical crew, William Blakeley, Manager of Marine Operations stated and the defendants do not dispute, that with the exception of three short port calls in 1979 for the purpose of taking on fuel and supplies, the ARCTIC EXPLORER has not been in the United States. Moreover, the vessel's annual surveys, required inspections and routine in-port repairs were performed in a Newfoundland, Canada.

6. On July 3, 1981, under the command of Captain William Jack King the ARCTIC EXPLORER, while en route to the coast of Labrador from the port of St. Anthony, Newfoundland, sank and became lost within Canadian territorial waters at a location approximately five miles off the coast of Newfoundland.

7. At approximately 7:30 a.m. on the morning of July 3, the ARCTIC EXPLORER began to list to starboard about ten degrees. Very shortly thereafter, the list increased to approximately thirty degrees, followed by an increase to forty degrees to starboard. Weather conditions at this time were estimated to be in the range of Beaufort scale six; a strong westerly breeze blew at an estimated force of twenty-two to twenty-seven knots, the skies were clear, visibility was good and the seas were choppy. The vessel continued listing to starboard and, within thirty minutes, for unknown reasons, the vessel sank.

8. On board the vessel at the time of the sinking were Captain King and seven members of his crew, all of whom were Canadian citizens, and specifically, residents of the Province of Newfoundland. The ARCTIC EXPLORER also carried an additional crew of twenty-four men, whose sole function was to perform oceanographic geophysical survey work. There is no indication in the record, nor was there any evidence produced at the hearing, which would establish that the scientific personnel played any role in the vessel's operations. As a result of the accident, thirteen of the thirty-two individuals aboard the vessel, lost their lives. Of those thirteen, one was American, two were Australians and ten were Canadians. The Canadian Coast Guard rescued the remainder of the ship's personnel from their lifeboat approx-

imately fifty-one hours after the vessel was lost.

9. The personnel on board the ARCTIC EXPLORER were employed as follows:

GSI

1. Cyril Aylward
2. Malcolm Bailee
3. Scott Brennan
4. James Catley
5. Gary Connolly
6. Jeff Cunkelman
7. Kenneth Erskine
8. William Evans
9. Barry Gilbert
10. John Hobert
11. Derek Jeans
12. Roger Locke
13. William MacInnis
14. Kevin McLean
15. Allan Mathewson
16. Terry Piercey
17. Derick Sheppard
18. Gerald Strachan

Tideland Geophysical Co.

1. Kelly McCamy

Carino

1. Clarence Ash
2. Gerald Butler
3. Mansfield Butt
4. Brian Hargreaves
5. Francis King
6. Jack King
7. Frank Philpott
8. Roy Weir

Ocean Nav Limited

1. John Pumphrey
2. Charles Randell
3. John Ratter

British Petroleum

1. Chris Martin
2. Wallace Way

All of the deck and engineering crew members on board the vessel, including the master, were employed directly by Carino. All of the scientific personnel aboard were employed by GSI. The remaining personnel were employed by Ocean Navigation, Ltd. ["ONL"], a Canadian electronic surveying company which provided technical services and equipment to GSI, British Petroleum, the client for whom GSI was performing geophysical and geological survey work, and Tidelands Geophysical Company ["Tidelands"], which also provided equipment to GSI.

10. Canadian authorities, including the Canadian Coast Guard, the Royal Canadian Mounted Police and the Canadian Ministry of Transport, undertook separate and extensive investigations of the sinking. A formal investigation convened in St. John, Newfoundland, Canada on April 27, 1982. It continued for several months during which time the authorities obtained testimony from fifty-five witnesses and accumulated a great deal of evidence. The Canadian Ministry of Transport recently issued a final, lengthy report concerning its investigation. Thus, the Canadian government has exhibited a very strong interest in this controversy.

11. Shortly after the vessel's sinking, survivors of those who lost their lives commenced litigation in several different state and federal courts in Texas, naming as Defendants GSI and TI. The American attorneys for the Plaintiffs in those actions successfully defeated efforts by GSI and TI to consolidate those suits by removing the state court actions to federal court.

12. On September 14, 1981, the petitioner, GSI, the time charterer, and Carino filed an action in the Federal Court of Canada, for limitation of liability pursuant to the Canadian Limitation Statute against all persons having claims against the petitioner. Pursuant to the Canadian Shipping Act, the Federal Court of Canada limited petitioners' liability and ordered petitioner to pay into that court's registry in Canadian dollars, plus interest to the date of deposit.

13. Facing the prospect of litigating twenty different lawsuits in various federal

and state courts of Texas, GSI and TI filed their Limitation of Liability petition in this Court on December 31, 1981. This petition satisfies the six-month procedural deadline for the filing of a limitation of liability petition. In that pleading GSI and TI petitioned this Court to invoke a concursus bringing all claims against them arising from the sinking into one forum to be disposed of in one action. The Petitioners invoked limitation under Canadian law and/or under the laws of the United States.

14. Pleading in the alternative, Petitioners sought several different forms of relief in their limitation of liability complaint. Stating their contention that Canadian substantive law must govern this controversy, the Petitioners seek dismissal of all claims filed against them in the limitation proceeding so that they might be dealt with in a more convenient forum in Canada. Alternatively, Petitioners asked this Court to maintain this limitation action and to apply Canadian law to the entire controversy, determining their liability, if any, and allow them to limit any such liability they might be deemed to owe to the Claimants herein. Further, Petitioners also asserted that if this Court should determine that the Canadian Limitation of Liability statute is not applicable to this limitation action, then they assert their right to exoneration from a limitation of liability pursuant to United States Limitation of Liability statute, 46 U.S.C. § 181 *et seq.*

15. On January 12, 1982, this Court approved the Petitioners ad interim stipulation executed on December 30, 1981 as surety for value in the amount of two hundred and seventy-five thousand dollars ($275,000) to stand as security for all claims in the limitation proceeding. The Court's order also enjoined the "commencement or prosecution" of all federal and state court proceedings on this matter and issued a monition directing all parties to file their respective claims against the Petitioners in this limitation of liability proceeding with the Clerk of this Court. A copy of the notice of monition, and a copy of the monition together with a copy of the order of January 12 were mailed to all persons known to have made a claim or filed any actions against the Petitioners. Further, public notice of such monition was also published once a week for four consecutive weeks in the Houston Chronicle, Houston, Texas; Halifax Chronicle Herald, Halifax, Nova Scotia; and Evening Telegram, St. John, Newfoundland, Canada.

16. Pursuant to Admiralty Rule F(6) the following twenty claims for wrongful death and personal injury have been filed in this proceeding:

1. Ash, Mrs. Clarence (Lois), Individually and as Personal Representative of the Estate of Clarence J. Ash, Deceased and as Next Friend for Their Minor Daughter, Annie;

2. Aylward, Pauline, Individually and as Administratrix of the Estate of Cyril Aylward;

3. Aylward, Vincent and Nellie, Individually and Jointly as Parents of the Deceased Cyril Aylward;

4. Baillie, Mr. and Mrs. William A. Individually and Jointly as Parents of the Deceased Malcolm Baillie;

5. Baillie, Deborah E., Individually and as Administratrix of the Estate of Malcolm Baillie, Deceased, and as Next Friend and Guardian of the Minor Children, Corey Baillie and Robert Baillie;

6. Butler, Anne, Individually and as Administratrix of the Estate of Gerald Cyril Butler, Deceased;

7. Catley, James;

8. Evans, William Albert;

9. Gilbert, Mr. and Mrs., Individually and as Administrators of the Estate of Barry Gilbert;

10. Hill, Edith, Individually and as Administratrix of the Estate of Kelly Wayne McCamy, Deceased;

11. Jeans, Mr. and Mrs. Walter T., Individually, Jointly, and as Personal Representatives of the Estate of Derek Thomas Jeans, Deceased;

12. King, Mrs. Florence;

13. King, Mr. and Mrs. Gaston, Individually and Jointly as Parents of the Deceased, Capt. William Jack King;

14. Philpott, Frank and Rose, Individually and as Personal Representatives of the Estate of Their Deceased Son Frank Patrick Philpott;

15. Piercey, Mr. and Mrs. Chelsey, Individually and as Administrators of the Estate of Terrance Piercey;

16. Pumphrey, John;

17. Randal, Charles;

18. Ratter, Hercules, Individually and as Administrator of the Estate of John Henry Ratter, Deceased;

19. Strachan, Susan, Individually and as Administratrix of the Estate of Gerald Douglas Strachan, Deceased, and as Next Friend and Guardian of Christopher and Amanda Strachan, Minor Children;

20. King, Lorraine, Individually and as Administratrix of Francis Joseph King, Deceased, and as Next Friend and Guardian of Peter and Susan King, Minor Children;

17. GSI employed Cyril Aylward, Malcolm W. Baille, James R. Catley, William A. Evans, Derek T. Jeans, Terry N. Piercey and Gerald D. Strachan, Canadian nationals, all of whom applied for employment in Canada to work on the ARTIC EXPLORER in Canadian waters. *See* Blakely Exhibit No. 5. TI employed Barry Gilbert, an Australian national, who signed his employment application in Dallas, Texas. *See* Blakely Deposition, p. 58. Carino employed Clarence Ash, Gerald Butler, Francis King, Jack King, and Frank Philpott, also Canadian nationals, all of whom entered into employment in Canada and were residents of Newfoundland. *See* Blakely Deposition, p. 90. Kelly McCamy was the only American national injured in the accident who was employed by Tidelands. He entered into his employment contract in the United States where he was a resident.

18. On May 11, 1982, four months after initiation of the limitation action, Petitioner filed a Motion for Partial Summary Judgment that Canadian law governs this controversy and a Motion to Dismiss all of the above claims on the basis of *forum non conveniens.*

19. On May 14, the Claimants moved for an extension of time of 90 days in order to conduct discovery on the jurisdictional issues raised in the Petitioner's motions, and an additional ninety days to conduct discovery. On July 14 the claimants' Motion for Extension was granted and the claimants were given thirty days to file briefs.

20. On August 13 the Claimants filed a Cross-Motion for Summary Judgment asserting that the instant limitation action is governed by American law and that Petitioners, being merely the time charterers of the vessel, are not entitled to invoke limitation under American law.

21. After a status conference, the Court by letter on October 8, 1982 informed the parties that it would assume that Canadian limitation law applied to this proceeding and that it would take up the issues raised by the various motions in the following order: (1) whether a time charterer is entitled to invoke limitation under Canadian maritime law; (2) whether the right of a time charterer to invoke limitation is substantive or procedural in nature according to Canadian law; (3) whether the claims for personal injury and death filed in this action are susceptible of limitation; and (4) whether the claims should be dismissed on grounds of *forum non conveniens.*

22. The parties were invited to file additional briefs on these issues within a time schedule set by the Court. Petitioners timely filed another memorandum of law in response to the Court's directive. More than two months after the date set by this Court for filing, claimants filed briefs relating to the motions previously filed, as well as another Motion to Dismiss the limitation action styled Claimants' Amended, Supplemental and Additional Motion to Dismiss. In this new Motion to Dismiss, claimants contend that this Court lacked subject matter jurisdiction to hear this limitation action and/or that the limitation complaint should be dismissed for failure to state a claim upon which relief can be granted. Claimants contend that the limitation proceeding should be dismissed because, among other

reasons, the Petitioners filed the action in bad faith, since they did not actually seek limitation, but only a *forum non conveniens* dismissal of claims filed in the limitation action.

23. Due to claimants' untimely filing of briefs responsive to this Court's directives, Petitioners filed a Motion to Strike the late-filed briefs and an additional Motion to Dismiss. This Court denied Petitioners' Motion to Strike and consolidated Claimants' Amended, Supplemental and Additional Motion to Dismiss with the other Motions to Dismiss and Motions for Summary Judgment for a single hearing on January 21, 1983.

24. During a lengthy hearing which lasted an entire day, the Court heard oral argument from counsel concerning each of the pending motions. Both claimants and petitioners offered the testimony of distinguished Canadian legal experts who testified extensively concerning Canadian maritime law. The Court has considered that expert testimony, all of the other evidence, arguments of counsel, and the extensive briefs filed in this matter by both petitioners and claimants in making these Findings of Fact and Conclusions of Law.

25. Any of the above Findings of Fact deemed to be Conclusions of Law are hereby adopted as such.

### Conclusions of Law

1. This is a maritime action wherein petitioners assert their statutory right, pursuant to the Limitation of Liability Act, ch. 43, 9 stat. 635 (1851) 46 U.S.C. § 181 *et seq.* as amended to limitation of liability on claims arising from the sinking of its vessel, ARTIC EXPLORER. The admiralty and maritime jurisdiction of this Court is properly invoked pursuant to 28 U.S.C. § 1333.

■ 2. A limitation proceeding pursuant to the terms of the Act permits a vessel owner to limit its liability for damages or loss arising out of a particular voyage to the value of the vessel plus pending freight charges at the termination of the voyage.

*See* e.g. *Black Diamond Steamship Corp. v. Robert Stewart & Sons, Ltd.,* (The *Norwalk Victory* ) 336 U.S. 386, 69 S.Ct. 622, 93 L.Ed. 754 (1949).

■ 3. Section 183 of the Limitation Act permits both American and foreign shipowners facing multiple suits arising out of one voyage to bring the claimants into one proceeding to apportion the owners liability. Provided their lawsuits are subject to the orders of a district court, all damage claimants may be enjoined from maintaining separate suits and required instead to file their claims in the limitation proceeding. *Beal v. Waltz,* 309 F.2d 721 (5th Cir.1962); *Gregory v. Mucho K, Inc.,* 438 F.Supp. 1117 (S.D.Fla.1977). *See Limitation Practice* at 1155–1158. Section 186 extends the right of limitation to "the *charterer* of any vessel in case he shall man, victual and navigate such vessel at his own expense or by his own procurement." The Petitioners' complaint alleges that GSI was the charterer of the ARTIC EXPLORER and therefore, claims the benefit of Section 186.

4. Claimants' Amended, Supplemental and Additional Motion to Dismiss the Petitioners' Limitation of Liability Complaint is a global attack based generally on Federal Rules of Civil Procedure 12(b)(1) through (6). The Court turns first to the claimants contention that the above styled action should be dismissed for failure to state a claim pursuant to Rule 12(b)(6). Claimants argue the instant action should be dismissed because the petitioners allege that they are the time charterers of the vessel and the American Limitations Act prohibits a charterer from obtaining a limitation of liability. *Barracuda Tanker Corp. v. United Kingdom of Great Britain and Northern Ireland,* 409 F.2d 1013 (2d Cir. 1969); *In Re G.B.R.M.S. Caldas,* 350 F.Supp. 566 (E.D.Pa.1972), *aff'd, Anderson Clayton & Co., Inc.,* 485 F.2d 678 (3rd Cir.1973). The Petitioners argue that the case at bar is governed by the Canadian limitation statute and as a timer charterer they may invoke the benefits of the limitation proceeding. In the alternative, Peti-

tioners allege that if this Court finds that Canadian law is not applicable, then they invoke the American limitations Act in that they "controlled, manned, navigated and directed the operations" of the ARCTIC EXPLORER.

■ 5. As the reasons for enacting the limitation act have waned, the courts have adopted a restrictive interpretation of its scope. *In Re Barracuda Tanker Corporation*, 281 F.Supp. 228, 230 (S.D.N.Y. 1968). However, this change in judicial attitudes has not affected the liberal approach which is manifest in determining who is entitled to maintain a limitation proceeding. 281 F.Supp. at 230. In appraising the sufficiency of the complaint, the Court relies on the standard enunciated in *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the [petitioner] can prove no set of facts in support of his claim which would entitle him to relief." The Court finds that the Petitioners' allegations are sufficient to state a claim for relief under Section 186, under the liberal standard of *Conley*.

■ 6. Next, the Claimants argue that this Court has no power to act because the case at bar does not constitute a genuine "case or controversy." In *KVUE v. Austin Broadcasting Corp.*, 709 F.2d 922 (5th Cir.1983), *aff'd*, — U.S. —, 104 S.Ct. 1580, 80 L.Ed.2d 114 (1984) the Fifth Circuit Court of Appeals wrote "the basic inquiry in determining whether a case or controversy exists is whether the conflicting contentions of the parties have adverse legal interest, a dispute definite and concrete, not hypothetical or abstract." Applying this standard to the case at bar, the Court considers this argument to be without merit and finds a justiciable controversy.

■ 7. Claimants also argue that the Court lacks subject matter jurisdiction over the instant controversy because the face of the petitioners complaint does not allege a federal cause of action. The crux of the claimants argument is that the petitioners have asserted jurisdiction under the limitations act in such a contingent and conditional fashion, that it is not asserted at all. The Court disagrees and finds the complaint sufficient to establish federal jurisdiction. *Williamson v. Tucker*, 645 F.2d 404 (5th Cir.1981), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).

■ 8. The Court finds no merit in the Claimants' contention that the Petitioners' limitation complaint should be dismissed because Petitioners filed that Complaint in bad faith. Claimants argue that, since petitioners sought, as one alternative form of relief, dismissal of the claims on grounds of *forum non conveniens* Petitioners do not really seek limitation of liability.

9. The Petitioners do indeed seek in their limitation complaint to limit their liability in the event this Court elected not to dismiss the claims filed in the limitation action on grounds of *forum non conveniens*. *The AQUITANIA*, 20 F.2d 457 (2d Cir.1927), cited by Claimants, does not support their contention that Petitioners' limitation complaint should be dismissed. The *Aquitania* decision involved a situation in which the total damages sought by all Claimants did not exceed the amount of the limitation fund. Federal courts have refused to maintain a limitation action in such cases. *See Lake Tankers Corp. v. Henn*, 354 U.S. 147, 77 S.Ct. 1269, 1 L.Ed.2d 1246 (1957). However, there is no doubt that, in this case, the total amount of damages sought by the Claimants does exceed the limitation fund. Claimants have not asserted otherwise.

10. Furthermore, the Petitioners did not file their limitation complaint in bad faith. Assuming that Petitioners had the right to invoke the limitation action, an issue which is to be discussed subsequently, they are fully entitled to exercise that right in this Court. Petitioners invoked the limitation action as a defensive measure, in response to the many lawsuits filed against them in numerous federal and state courts in Texas. *See M/S BREMEN v. Zapata Off-Shore Co.*, 407 U.S. 1, 19–20, 92 S.Ct. 1907,

1918, 32 L.Ed.2d 513 (1972). Petitioners had no other prudent alternative when faced with claimants' efforts to litigate the same controversy in numerous courts in Texas. Indeed, certain of the Claimants successfully blocked Petitioners' previous efforts to remove some of the actions filed in Texas state court into federal court, thus precluding consolidation of the suits in one federal court. Lacking any other procedural mechanism to consolidate all the claims arising from this controversy, Petitioners elected to exercise their right to invoke a limitation of liability action in order to consolidate all claims and dispose of them in one action. For these reasons, the Court denies that portion of Claimants' Motion to Dismiss the Limitation Complaint which is based on Claimants' contentions that Petitioners' limitation complaint was filed in bad faith.

■ 11. Under general conflict of law principles, a forum will apply that body of substantive law which governs the rights and liabilities of the parties according to recognized choice of law principles. However, with respect to rules of procedure, the forum usually applies its own law. *See* Goodrich & Scoles, *Conflict of Laws* § 80 (4th ed. 1964). "It is ... well settled that 'where the rights of the parties are grounded upon the law of the jurisdiction other than the forum ... the forum will apply the foreign substantive law, but will follow its own rules of procedure.' *Bournias v. Atlantic Maritime Co., Ltd.*, 220 F.2d 152, 154 (2d Cir.1933)." *In the Matter of Bethlehem Steel Corp.*, 435 F.Supp. 944, 946 (N.D.Ohio 1976), 631 F.2d 441 (6th Cir. 1980), *cert. denied*, 450 U.S. 921, 101 S.Ct. 1370, 67 L.Ed.2d 349 (1981).

12. Claimants argue that limitation statutes are procedural rather than substantive in nature and therefore, the American Limitation Act should apply. Conversely, the Petitioners urge this Court to hold that the right of a time charterer to invoke a limitation proceeding is substantive, and therefore this controversy is governed by both the substantive and procedural sections of the Canadian limitations statute.

The Claimants rely upon *Oceanic Steam Navigation Co. v. Mellor* (The *Titanic*), 233 U.S. 718, 34 S.Ct. 754, 58 L.Ed. 1171 (1914) in support of their argument. The Supreme Court's ruling in the *Titanic* seems to indicate that a limitation proceeding is procedural rather than substantive in nature and that the forum should apply its own law. *See Id.* at 733, 34 S.Ct. at 756. G. Gilmore & C. Black, *The Law of Admiralty*, 939 (2d ed. 1975) (hereinafter Gilmore & Black.) In *Titanic*, the owner of the British flagship TITANIC filed a petition in the United States to limit its liability. American and English claimants argued that English limitation law should govern. Unlike the federal statute, English law provided a fund for recovery even though the vessel was lost. The Supreme Court, however, held that litigators who chose to sue the owner of the TITANIC in this country were limited in their recovery by American limitation laws:

> It is true that the act of Congress does not control or profess to control the conduct of a British ship on the high seas .... [and] that the foundation for a recovery upon a British tort is an obligation created by British law. But it also is true that the laws of the forum may decline altogether to enforce that obligation on the ground that it is contrary to the domestic policy, or may decline to enforce it except within such limits as it may impose. It is competent therefore for Congress to enact that in certain matters belonging to admiralty jurisdiction parties resorting to our courts shall recover only to such extent or in such way as it may mark out.

*Id.* at 732, 34 S.Ct. at 755 (citations omitted). Significantly, the court held that American limitation law "might be applied to foreign ships if sued in this country although they were not subject to our substantive law." *Id.* at 733, 34 S.Ct. at 756.

13. Reading the *Titanic*, however, in light of the Supreme Court's ruling in *Black Diamond Steamship Corp. v. Robert Stewart & Sons* (The *Norwalk Victory*) 336 U.S. 386, 69 S.Ct. 622, 93 L.Ed. 754

(1949), it is clear that a limitation statute may be both procedural and substantive. In *Norwalk Victory*, the Supreme Court expressly modified its former pronouncement in the *Titanic*, holding that if the foreign limitation "attaches" to the right created under the foreign law, then the foreign limitation governs, regardless of existing remedies provided under the forum's limitation laws. *Id.* at 396, 69 S.Ct. at 627. In short, if the foreign limitation law is part of the substantive law of the foreign country whose law governs the controversy under normal choice of law principles, the United States court can, and should, apply the foreign limitation law along with the rest of the substantive law of the foreign country. *See Matter of Bethlehem Steel Corp.*, 435 F.Supp. 944 (N.D.Ohio 1976), 631 F.2d 441 (6th Cir. 1980), *cert. denied*, 450 U.S. 921, 101 S.Ct. 1370, 67 L.Ed.2d 349 (1982); *Petition of Chadade S.S. Co. [The YARMOUTH CASTLE]*, 266 F.Supp. 517 (S.D.Fla.1967).

14. The *Norwalk Victory* Court directed the district courts to conduct an inquiry initially to determine the procedural or substantive nature of the foreign limitation statute.

> It is important to add, moreover, that the question of what law governs the substantive limit of liability should be determined in advance of the proof of individual claims. A proceeding to limit recovery, and the amount of the applicable limit, like the value of the vessel and freight, is a question affecting the magnitude of the rest from which recovery is sought. It is a question, therefore, which lies at the threshold of all claims, is equally relevant to all, and should accordingly be disposed of before any. *Id.* 336 U.S. at 397–398, 69 S.Ct. at 628–629.

Pursuant to the procedure outlined in the *Norwalk Victory*, a hearing was convened in the Court to establish and prove whether the right of a time charterer to invoke limitation is procedural or substantive in nature under the relevant Canadian law in accordance with Rule 44.1 Fed.R.Civ.P. In exploring the substantive/procedural dichotomy, the Court considered the live testimony of three distinguished members of the Canadian bar versed in the area of admiralty law. Although the Canadian law experts differed on some of the points at issue, they were in complete agreement as to the absence of any direct controlling authority defining whether the Canadian Shipping Act is substantive or procedural.

15. The only authority discussing the procedural or substantive nature of the Canadian Shipping Act is Judge Kurpansky's opinion in the *Matter of Bethlehem Steel Corp.*, 435 F.Supp. 944 (N.D.Ohio, 1976), *cert. denied*, 450 U.S. 921, 101 S.Ct. 1370, 67 L.Ed.2d 349 (1982). In *Bethlehem Steel*, the steamship STEELTON collided with a bridge while proceeding through the Walland Canal on a voyage from Buffalo, New York to Contrecocur, Quebec, Canada. As a result of this collision, which occurred wholly within the territorial boundaries of Canada, passage through the canal was brought to a standstill at that location. The owner of the STEELTON filed a complaint in federal district court against the plaintiff, Bethlehem Steel Corporation, for limitation of liability, claiming the benefit of the lesser limitation provided by the Canadian Shipping Act.

16. After a hearing to determine whether the Canadian limitation statute was substantive or procedural, the district court concluded that "the limitation of liability provisions of the Canadian Shipping Act are procedural and do not attach to the rights created by the Act." The Claimants argue that the holding in *Bethlehem Steel* stands for the proposition that the Canadian Shipping Act is procedural and not substantive. This argument, however, misreads the narrow issue addressed by the *Bethlehem* court. The district court's consideration of the limitation statute was confined to sections 647(2)(e) and (f) [1] and the

---

1. The Canada Shipping Act, §§ 647(2)(e) and (f), provides:

(2) The owner of a ship, whether registered in Canada or not, is not ... liable for damages beyond the following amounts, namely,

issue addressed was whether the provision setting the maximum limitation on the amount of the fund created by the action was substantive or procedural.

17. In this case, the issue before the Court is quite different, i.e., whether the *right* to invoke the benefits of the limitation statute are procedural or substantive (emphasis added). In distinguishing between the substantive and procedural nature of the right to seek damages, the Court's attention was directed to the Canadian Supreme Court's opinion in *Livesly v. Horst*, [1924] S.C.R. 605. In a well-reasoned opinion by one of Canada's most distinguished jurists, Sir Lymon Duff, it was stated:

> The concept of procedure, too, is, in this connection, a comprehensive one, including process and evidence, methods of execution, rules of limitation affecting the remedy and the course of the court with regard to the kind of relief that can be granted to a suitor. But it does not, of course, extend to substantive rights; and here questions of substantive rights include all questions as to the "nature and extent of the obligation" . . . .

18. Therefore, if the limitation of liability provisions of the Canadian Shipping Act are found to create a right to recover damages, then the provision is substantive. *Norwalk Victory*, 336 U.S. at 396, 69 S.Ct. at 627. As the *Bethlehem Steel* court recognized "under these circumstances, the limitation would attach to and specifically qualify the right created by the Canadian Shipping Act" and the substantive law of Canada would be applied to the instant action. 435 F.Supp. at 947. Conversely, if the Canadian law provides the mechanism or modality for the qualification or measure of damages, then the limitation of liability provision of the Shipping Act would be deemed procedural and would not attach

to the rights created by the Act. In such a case, the law of the forum, i.e., 46 U.S.C. § 183 *et seq.* would control the current controversy.

■ 19.˙ The relevant portions of the Canadian Shipping Act, § 649(1)(a) and (b) provide:

> 649. (1) Sections 647 and 648 extend and apply to
>
> (a) the charterer of a ship;
>
> (b) any person having an interest in or possession of a ship from and including the launching thereof; and
>
> .        .        .        .        .
>
> where any of the events mentioned in paragraphs 647(s)(a) to (d) occur without their actual fault or privity, and to any person acting in the capacity of master or member of the crew of a ship and to any servant of the owner or of any person described in paragraphs (a) to (c) where any of the events mentioned in paragraphs 647(2)(a) to (d) occur, whether with or without his actual fault or privity.

Upon thorough review of Section 649(1)(a) and (b) of the Canadian Shipping Act, the pleadings and oral arguments of counsel, and the testimony of the expert witnesses, the Court finds along with the learned expert witnesses for the petitioners, that the above provision of the Canada Shipping Act is substantive and attaches to the rights created by that Act. Since the provision is part of the substantive law of Canada, the Court also finds that the Canadian limitations statute should govern the instant action.

The Court finds that Petitioners, as a time charterer, is entitled to invoke this limitation of liability action and this action is properly before this Court. Therefore, Claimants' Motion to Dismiss the Petitioners' Limitation of Liability Complaint is

---

*    *    *    *    *    *

(e) in respect of any loss of life or personal injury, either alone or together with any loss or damage to property or any infringement of any rights mentioned in paragraph (d), an aggregate amount ·equivalent to 3,100 gold francs for each ton of that ships tonnage; and

(f) in respect of any loss or damage to property or any infringement of any rights mentioned in paragraph (d), and aggregate amount equivalent to 1,000 gold francs for each ton of that ship's tonnage.

denied. Claimants' Motion for Summary Judgment that United States limitation of liability law must govern this controversy is also denied. Petitioners' Motion for Summary Judgment that the Canadian limitation of liability act governs the instant action is granted. *See, Petition of Chadade Steamship Co., Inc. (Yarmouth Castle),* 266 F.Supp. 517 (S.D.Fla.1967).

20. In order to determine whether this case should be dismissed for *forum non conveniens,* the Court must first ascertain whether American or Canadian law is applicable. *Chiazor v. Transworld Drilling Co.,* 648 F.2d 1015, 1017–18 (5th Cir.1981), *cert. denied,* 455 U.S. 1019, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982). If American law applies, this Court lacks discretion to dismiss. *De Oliveira v. Delta Marine Drilling Co.,* 684 F.2d 337, 339 (5th Cir.1982). Conversely, if this Court were to find that Canadian law applies to this action, dismissal for *forum non conveniens* would be appropriate.

■ 21. The Claimants do not dispute that Canadian substantive law is applicable. It is a well-settled principle of admiralty law that "in the absence of some overriding domestic policy translated into law, the right to recover for a tort depends upon and is measured by the *lex loci delicti commissi,* i.e., the law of the place where the tort occurred." *Black Diamond S.S. Corporation v. Robert Stewart & Sons (Norwalk Victory),* 336 U.S. 386, 396, 69 S.Ct. 622, 627, 93 L.Ed. 754 (1949). *See, Cuba Railroad Company v. Crosby,* 222 U.S. 473, 32 S.Ct. 132, 56 L.Ed. 274 (1912); *Petition of Chadade Steamship Co., Inc.,* (Yarmouth Castle), *supra.* Since the sinking of the ARCTIC EXPLORER occurred within Canadian territorial waters, under the *lex loci delicti commissi* analysis the rights and liabilities of the parties arising as a consequence of that sinking are governed by the law of Canada.

■ 22. Choice of law is determined by eight factors set forth in *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), and *Hellenic Lines Ltd. v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). The claimants do not dispute that the vessel, a blue-water seagoing vessel, is subject to the standard enunciated in these two cases. In the present case, the application of the *Lauritzen* and *Rhoditis* standard leads to the conclusion that Canadian law applies. The *Lauritzen* and *Rhoditis* factors applicable to the instant controversy are:

(1) place of wrong

(2) law of the flag

(3) domicile of injured seaman

(4) allegiance of shipowner

(5) place of contract

(6) accessibility of foreign forum

(7) law of the forum

(8) base of operations

*See Nunez-Lozano v. Rederi,* 634 F.2d 135, 137 (5th Cir.1980).

■ 23. The present action arises out of an accident in the territorial waters of Canada, on board a vessel owned by a Canadian corporation flying the flag of Canada, in which injuries were sustained by Canadian citizens hired in Canada by an American corporation.

■ 24. The contacts necessary to create an American base of operations must be substantial. *Fisher v. Agios Nicolaos V,* 628 F.2d 308, 377 (5th Cir.1980) *cert. denied, sub. nom. Valmas Brothers Shipping, S.A. v. Fisher,* 454 U.S. 816, 102 S.Ct. 92, 70 L.Ed.2d 84 (1981). In the instant action, the vessel earned no revenues in the United States. It operated out of Canadian ports where it was repaired and maintained. GSI conducted the daily operations of the vessel from its three Canadian offices. Although the vessel made three port calls to the United States, the mere fact that a vessel periodically visits this country is insufficient to establish the U.S. as a base of operations. *Volyrakis v. M/V Isabelle,* 668 F.2d 863, 868 (5th Cir.1982). Consequently, the great weight of the evidence convinces the Court that the contacts are not substantial and the base of operations factor must be weighed in favor of Canadian law.

25. While the Court is mindful of the admonition that "Lauritzen did not create a contact counting test," *Hellenic Lines Ltd. v. Rhoditis*, 412 F.2d 919 (5th Cir.1969), and further, that parties may not "avoid their statutory duties by adopting certain labels which make them appear foreign," *Pavlou v. Ocean Trading Marine Corporation*, 211 F.Supp. 320, 324 (S.D.N.Y. 1962), it is nonetheless true that in this case, all contacts are with Canada. Therefore, this Court finds that Canadian law must govern this controversy.

26. After the applicable law is ascertained, that result is utilized in the Court's resolution of the *forum non conveniens* issue. *Chiazor v. Transworld Drilling Co.*, 648 F.2d 1015 (5th Cir.1982); *Fisher v. Agios Nicolaos V*, 628 F.2d 308, 315, *reh'g* and *reh'g en banc denied*, 636 F.2d 1107 (5th Cir.1980). However, if Canadian law applies, as it does in this case, the Court may then apply the test enunciated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506–07, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947), and discretionally dismiss the case or retain jurisdiction and apply Canadian law. In *Gilbert*, the Supreme Court provided district courts with a multi-factor test for determining whether to discretionally dismiss under *forum non conveniens*.

27. The factors which the Court must consider in determining whether to grant a motion to dismiss on grounds of *forum non conveniens* were set forth by the Supreme Court in *Gilbert*, 330 U.S. at 508–09, 67 S.Ct. at 843. The Court enumerated both the private and public interest factors affecting the convenience of the litigants and of the forum. The private interest factors include "the relative ease of access to proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining the attendance of willing, witness; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy expeditious and inexpensive." *Id.* at 508, 67 S.Ct. at 843. The public interest factors include the administrative difficulties flowing from court congestion; the local interest in having local-ized controversies at home; ... the avoidance of unnecessary problems in conflicts of law, or in application of foreign law, and the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.* at 509, 67 S.Ct. at 843.

28. The Supreme Court held in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254–255, 102 S.Ct. 252, 265, 70 L.Ed.2d 419 (1981) that "at the outset of any *forum non conveniens* inquiry, however, the Court must determine whether there exists an alternative forum." This requirement is ordinarily met when the defendant is "amenable to process in the foreign forum." *Gulf Oil Corp. v. Gilbert*, 330 U.S. at 507, 67 S.Ct. at 842 (1947). GSI and TI have voluntarily agreed to submit to the jurisdiction of the Canada courts and not to raise the statute of limitation as a defense. There is no other evidence to suggest the inaccessibility of the foreign forum.

29. The Claimants contend that the remedy available to them in Canada is limited to workers' compensation which, they contend, is so inadequate in amount to be no remedy at all. In addition to being available, the alternative forum must also be adequate. In *Piper*, the Court held that a change in law unfavorable to the claimants should not play a significant role in the *forum non conveniens* balancing analysis unless, the Court hypothesized, "the remedy [offered by the alternative forum] is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper*, 454 U.S. at 254, 102 S.Ct. at 265. Moreover, this Court may presume that foreign law is adequate, in the absence of any showing by the claimants to the contrary. *Vaz Borralho v. Keydril Co.*, 696 F.2d 379 (5th Cir. 1983), *reh'g denied*, 710 F.2d 207, (5th Cir. 1983). Based upon this Court's review, there is simply no evidence tending to show that the Canadian law remedies are inadequate and therefore, the requirement of an adequate forum is also satisfied.

30. Under *Gilbert* analysis, relevant private and public interest factors strongly point toward dismissal of this ac-

tion. It appears to the Court that discovery and trial on the issue of liability and damages will be greatly facilitated if this action proceeds in Canada. Almost all sources of documentary and physical evidence are located in Canada where the vessel was registered, classified, modified, maintained and repaired. As to availability of witnesses, the great bulk of the witnesses, both with respect to the liability and damages aspects of this matter, are located in Canada. The factors such as availability of compulsory process and cost of attendance of witnesses at trial favor a *forum non conveniens* dismissal.

31. Another critical private interest factor, in addition to the availability of evidence and witnesses, is the Court's ability to assert jurisdiction over all parties to the litigation, including potential third-party defendants. In the case at bar, not all potential culpable parties are before this Court. Carino, as well as the Canadian architects and shipyards who modified, maintained and repaired the vessel are located in Canada. Maintenance of suit in this forum would likely result in additional Canadian litigation with respect to these other potential defendants. It would be "burdensome" to Petitioners to require them to litigate the liability and damages issues here, relegating them to separate indemnity and/or contribution actions against the remaining potentially-liable parties in Canada. *Piper Aircraft Co. v. Reyno*, 454 U.S. at 259, 102 S.Ct. at 267. "Finding that trial in the plaintiff's chosen forum would be burdensome ... is sufficient to support dismissal on grounds of *forum non conveniens*." *Piper Aircraft Co. v. Reyno*, 454 U.S. at 259–260, 102 S.Ct. at 267–268. The inability to bring all potential defendants into the United States forum also weighs in favor of *forum non conveniens* dismissal.

32. This Court is also impressed by the strong interest shown in this incident by the Canadian government. The Supreme Court considered this factor in *Piper*, 454 U.S. at 260, 102 S.Ct. at 268. Canada has expressed very strong concern in this accident which occurred in Canadian waters

and involved a Canadian-flagged, Canadian-maintained, Canadian-crewed vessel. Apart from the Petitioners herein, all other potential defendants are Canadian. Almost all of the Claimants here are Canadian citizens and residents. Canada has the predominate interest in assuring that its residents receive compensation. Several agencies of the Canadian government have investigated the sinking. Aside from establishing the availability of sources of proof in the alternative Canadian forum, the very active participation of the Canadian vessel in Canadian waters also evidences a local interest in this controversy. As the Supreme Court noted in *Piper*, there is "a local interest in having localized controversies decided at home. *Gulf Oil Corp. v. Gilbert*, 330 U.S. at 509, 67 S.Ct. at 843...." 454 U.S. at 260, 102 S.Ct. at 268. However, in view of the limited weight which the Supreme Court accorded this interest in *Piper* the Court relies primarily on the determination Canadian law must govern this controversy, in concluding that this action is more appropriately tried by a Court familiar with Canadian law.

33. Despite the fact that the Petitioners are American companies, any interest which the United States might have in regulating the activities of American companies abroad is simply insufficient when weighed against the great interest of Canada in this controversy. "The American interest in this accident is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here." *Piper Aircraft Co. v. Reyno*, 454 U.S. at 261, 102 S.Ct. at 268.

34. In the face of these significant contacts with Canada, the Claimants argue that this Court is precluded from dismissing the suit of an American seaman on grounds of *forum non conveniens*. The claimants also assert that not only is the Court precluded from dismissing the claim of Kelly Wayne McCamy, but the Court must retain jurisdiction over the claims of the foreign litigants as well. Or-

dinarily, there is a strong presumption in favor of the claimants' choice of forum, one which is overcome only when the private and public interest factors clearly point toward trial in the alternative forum. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 265, 70 L.Ed.2d 419 (1981). However, in the instant action, all the claims except one are brought by foreigners. Therefore, the presumption traditionally afforded the claimants' forum choice applies with less force. *Piper* 454 U.S. at 256, 102 S.Ct. at 266. Moreover, the presence of an American claimant is not in and of itself sufficient to bar this Court from dismissing a case on the grounds of *forum non conveniens. Alcoa Steamship Company, Inc. v. M/V Nordic Regent,* 654 F.2d 147, 154–58 (2d Cir.) (*en banc*), *cert. denied,* 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980); *Pain v. United Technologies Corp.,* 637 F.2d 775, 795–99 (D.C. Cir.1980), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981). Based upon a consideration of the relevant private and public factors, the facts of the instant action demonstrate that Canada is a more appropriate forum for the instant litigation and the action is dismissed on *forum non conveniens* grounds.

The *forum non conveniens* dismissal is conditioned on the following: Petitioners GSI and TI are to (1) submit to service of process in an appropriate Canadian court within ninety (90) days of the date of this order; (2) waive any statute of limitation defense; and (3) agree to satisfy any judgment rendered by the Canadian court. Should GSI and TI fail to meet any of these conditions, this Court will resume jurisdiction over this case.

35. All Findings of Fact recited above are deemed Conclusions of Law and are hereby adopted as such.

36. For the reasons discussed above, it is hereby ORDERED, ADJUDGED, and DECREED that

Petitioners' Motion to Strike Claimants'/Respondents' Supplemental Brief and Claimants'/Respondents' Amended, Supplemental and Additional Motion to Dismiss, Response to Defendants'/Petitioners' Motion to Dismiss and Combined Brief in Support of said Motions and Responses is Denied;

Claimants'/Respondents' Motion to Dismiss is DENIED;

Claimants'/Respondents' Motion for Summary Judgment is DENIED;

Petitioners' Motion for Summary Judgment that Canadian law governs this controversy and all the claims filed in this action is GRANTED;

Petitioners' Motion to Dismiss the Claims filed in this limitation of liability proceeding on grounds of *forum non conveniens* is GRANTED.