**Luis CASTILLO, Plaintiff,**

**v.**

**The SHIPPING CORP. OF INDIA, Defendant.**

**No. 84 Civ. 7347 (GLG).**

United States District Court, S.D. New York.

April 11, 1985.

As Amended April 23, 1985.

Kreindler & Kreindler, New York City (Paul S. Edelman, New York City, of counsel), for plaintiff.

Healey & McCaffrey, New York City (John F. McHugh, New York City, of counsel), for defendant.

## OPINION

GOETTEL, District Judge:

The defendant, the Shipping Corp. of India ("SCI"), is a corporation wholly owned by the government of India and formed under the laws of that country. It is engaged in shipping activities in the United States and throughout the world. SCI owns and operates a fleet of vessels, including the State of Andhra Pradesh. That ship has not called at the Port of New York since 1980 and is presently assigned to an Asian route.

On October 14, 1981, Luis Castillo, a citizen and resident of the Dominican Republic, was injured in the Dominican Republic while working aboard the Andhra Pradesh. Castillo alleges that SCI committed numerous negligent acts that were the direct and proximate causes of his injuries. Castillo now brings this action seeking $300,000 in damages. SCI's New York agents and the Indian Embassy in Washington, D.C., have been served with a summons and complaint.

SCI moves to dismiss the action for lack of personal jurisdiction and *forum non conveniens.* SCI asserts that it is a "foreign state" under the Foreign Sovereign Immunities Act of 1976 (the "FSIA" or the "Act"), 28 U.S.C. §§ 1330, 1602–1611

(1982), entitled to immunity from the jurisdiction of the United States' federal and state courts. Both parties buttressed their arguments on this motion with affidavits. Consequently, we treat this as a motion for summary judgment pursuant to Fed.R. Civ.P. 56. We may grant the motion only if the memoranda and supporting materials before us "disclose 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2725 (2d ed. 1983) (quoting Fed.R. Civ.P. 56(c)). For the reasons stated below, the Court is convinced that the defendant qualifies for the immunity provided by the FSIA. Therefore, its motion for summary judgment is granted.

### I. *Discussion*

**A. The Foreign Sovereign Immunities Act**

The FSIA regulates the Court's jurisdiction in this case. This relatively new statute raises difficult interpretive questions, but provides little guidance in the resolution of those questions. *See Gibbons v. Udaras na Gaeltachta,* 549 F.Supp. 1094, 1106 (S.D.N.Y.1982). A tangled web of provisions in the FSIA governs the central issues of subject matter jurisdiction,[1] personal jurisdiction, and sovereign immunity. These, in turn, determine a foreign state's amenability to suit. Section 1330(a) of the Act confers subject matter jurisdiction upon the district courts in certain actions against foreign states "not entitled to immunity." Personal jurisdiction exists when the district court has subject matter jurisdiction and process has been served in conformity with section 1608.[2] 28 U.S.C.

---

**1.** SCI does not argue that this Court lacks subject matter jurisdiction. However, if immunity is recognized under the FSIA, the Court possesses neither subject matter nor personal jurisdiction over the defendant. *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 485 n. 5, 103 S.Ct. 1962, 1967 n. 5, 76 L.Ed.2d 81 (1983). A court can raise the issue of subject matter jurisdiction on its own motion at any time. Fed.R. Civ.P. 12(h)(3).

**2.** Section 1608 prescribes acceptable methods of service of process upon a foreign state or its instrumentality. For purposes of section 1605(a)(2), the plaintiff's service upon SCI's agents in New York was proper, 28 U.S.C. § 1608(b)(2) (1982); however, service upon the Indian embassy was improper and ineffective. House Reports 1976 U.S.Code Cong. & Ad.News 6604 at 6625.

§ 1330(b) (1982). Thus, the absence of sovereign immunity is essential for the existence of subject matter jurisdiction, which, in turn, is necessary for the attainment of personal jurisdiction.[3]

Section 1604 governs claims of sovereign immunity by foreign nations. It provides as follows:

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

28 U.S.C. § 1604 (1982). Although this section gives foreign countries a general grant of immunity, it limits the applicability of that immunity. First, the grant may be subject to international agreements. Second, the party seeking refuge under the Act must be a foreign state within the meaning of the FSIA. Finally, the immunity is subject to exceptions contained in other sections of the Act.

That the first two conditions are not germane is undisputed. Neither party alleges or attempts to prove the existence of any international agreement affecting section 1604's grant of immunity. Similarly, both the plaintiff and the defendant agree that SCI is a foreign state as section 1603(b) of the Act defines that term.[4] The sole dispute between the parties and the central issue in the case is whether any of the exceptions to immunity embodied in sections 1605 to 1607 remove the cloak of immunity from the defendant and render it subject to the jurisdiction of this Court. Specifically, the plaintiff asserts that the exception to immunity in the first clause of section 1605(a)(2) and the exception contained in section 1605(b) apply to the defendant and subject it to our jurisdiction.

### 1. Section 1605(a)(2)

The first clause of section 1605(a)(2) provides that a foreign nation is not immune in actions "based upon a commercial activity carried on in the United States by [that] foreign state." 28 U.S.C. § 1605(a)(2) (1982).[5] Plaintiff Castillo claims that this

---

**3.** Confusion has arisen as to the relationship between the statutory provision relating to personal jurisdiction and the due process limitations of the fifth and fourteenth amendments. Some courts, relying on the legislative history of the Act, assert that the FSIA's immunity provisions should be interpreted to embody the due process requirements set forth in *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. *See, e.g., Alberti v. Empresa Nicaraguense de la Carne*, 705 F.2d 250 (7th Cir.1983). However, the Second Circuit treats the statutory and constitutional questions separately. *See Texas Trading & Milling Corp. v. Federal Bank of Nigeria*, 647 F.2d 300, 308 (2d Cir.1981), *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982). The Second Circuit's mode of analysis enhances the resolution of the interpretive questions raised by the Act and helps untie "the FSIA's Gordia knot." *Id.* at 307.

**4.** Section 1603 defines a foreign state to include an instrumentality of a foreign nation
(1) which is a separate legal person, corporate or otherwise, and
(2) which is an organ of a foreign state ... or a majority of whose shares ... is owned by a foreign state or a political subdivision thereof, and

(3) which is neither a citizen of a State of the United States ... nor created under the laws of any third country.
28 U.S.C. § 1603(b) (1982). The defendant, a legally distinct corporation, wholly owned by the government of India and incorporated in that country, clearly fits within the definition of a foreign state set out in section 1603. *See, e.g., Sugarman v. Aeromexico, Inc.*, 626 F.2d 270 (3d Cir.1980) (holding that a Mexican corporation that was wholly owned by the Mexican government was a "foreign state").

**5.** The broad or classical theory of sovereign immunity shielded foreign states from *any* action against them in the court of another sovereign unless they consented to defend the action. *Sugarman v. Aeromexico, Inc., supra*, 626 F.2d at 274. The FSIA codified in large part a more restrictive theory of sovereign immunity. *See Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 487–88, 103 S.Ct. 1962, 1968–69, 76 L.Ed.2d 81 (1983); *Sugarman v. Aeromexico, Inc., supra*, 626 F.2d at 274–75. This "restrictive" theory accords immunity only to a foreign state's governmental acts, not to its commercial or private activities. *Sugarman v. Aeromexico, Inc., supra*, 626 F.2d at 274.

negligence action, which arose in the Dominican Republic on one of the defendant's vessels, is "based upon" SCI's United States shipping operations within the meaning of section 1605(a)(2). The defendant disputes this contention. Resolution of their dispute requires us to examine the FSIA's language and purposes as well as the cases interpreting the Act.

A commercial activity carried in the United States is one having substantial contact with this country. 28 U.S.C. § 1603(e) (1982). Castillo alleges that SCI engages in shipping operations in the United States, that its ships call regularly at U.S. ports, and that it earns a large portion of its revenues here. In a supporting affidavit, the plaintiff claims that a spot check of a Lloyd's listing revealed that two of SCI's vessels recently called at the Port of New York. Taking these allegations as true for purposes of this motion, we conclude that SCI carries on shipping activities having substantial contact with the United States. *See In re Rio Grande Transport, Inc.*, 516 F.Supp. 1155, 1161 & n. 5 (S.D.N.Y.1981) (citing similar activities as support for asserting jurisdiction under the Act). Moreover, the shipping activities involved in this case are commercial, not governmental, in nature. *See China National Chemical Import & Export Corp. v. M/V Lago Hualaihue*, 504 F.Supp. 684, 689 (D.Md.1981) (the operation of commercial cargo vessels is a commercial activity). The issue, then is whether this action is "based upon" SCI's United States shipping activities within the meaning of section 1605(a)(2).

Courts, attempting to define the words "based upon," have employed a number of formulations to describe the specific connection required between the lawsuit and the United States activity relied upon for jurisdiction. In *Ministry of Supply, Cairo v. Universe Tankships, Inc.*, 708 F.2d 80, 84 (2d Cir.1983), the Second Circuit stated that the acts sued upon must "comprise an integral part of the state's" U.S. activities. The same court, in *Gemini Shipping, Inc. v. Foreign Trade Organization for Chemicals and Foodstuffs*, 647 F.2d 317, 319 (2d Cir.1981), held that an action on a guarantee was "based upon" the United States activity because it was "part and parcel" of the United States activity. Finally, in *Sugarman v. Aeromexico, Inc.*, 626 F.2d 270, 272 (3d Cir.1980), the Third Circuit required that a "nexus" exist between the grievance and the activity carried on in this country. In the case before us, jurisdiction would not lie under any of these formulations.

Neither the act complained of nor the injury sustained had any impact on or tie to SCI's commercial activities in this country.[6] The plaintiff's alleged injuries were caused by acts that occurred in the Dominican Republic on a foreign government-owned ship, on a voyage having no connection with the United States. This lawsuit's only link to SCI's shipping activities in the United States is that it occurred on one of the defendant's 144 vessels, some of which occasionally call at United States ports. The mere happenstance of an accident on one of SCI's ships moored anywhere in the world cannot convert an ordinary negligence action into one "based upon" SCI's United States activities. To hold otherwise would rob the words "based upon" of all meaning and would convert a federal long arm act, *see* H.R.Rep. No. 1487, 94th Cong., 2d Sess., 13, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6604, 6612 [hereinafter cited as House Reports], into a "doing business" statute. *Vencedora Oceanica Navigacion, S.A. v. Compagnie Nationale Algerienne de Navigation*, 730 F.2d 195, 202–03 (5th Cir.1984) (per curiam); *Harris v. VAO Intourist*, 481 F.Supp. 1056, at 1059–63. The result would be to open our courts to suits against most of the world's governmentally-owned transport lines (air

6. Of course, the acts giving rise to the cause of action need not take place in the United States, as long as the acts sued upon were performed in connection with the commercial activity carried on in the United States. *Gibbons v. Udaras na Gaeltachta*, 549 F.Supp. 1094, 1108 n. 5 (S.D.N.

Y.1982). Nor does the plaintiff have to be a United States citizen to sue under the Act. *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). These factors merely contribute to the overall analysis.

as well as sea), since most countries trade with the United States.

The plaintiff relies on *In re Rio Grande Transport, Inc.,* 516 F.Supp. 1155 (S.D.N.Y.1981), for support. *Rio Grande* involved an action against a foreign instrumentality for wrongful death, personal injury, and cargo loss arising out of a collision in the Mediterranean Sea between the foreign state's ship and an American-owned vessel. The court interpreted the phrase "commercial activity" to encompass the foreign state's world-wide shipping operations, and held that the suit was "based upon" those activities within the meaning of section 1605(a)(2). *In re Rio Grande Transport, Inc., supra,* 516 F.Supp. at 1161–62.

*Rio Grande's* far-reaching interpretation has been the subject of much criticism, *see, e.g., Vencedora Oceanica Navigacion, S.A. v. Compagnie Nationale Algerienne de Navigation, supra,* 730 F.2d at 201–03, and is at odds with the overwhelming majority of cases.[7] *See, e.g., Paterson, Zochonis (U.K.) Ltd. v. Compania United Arrow, S.A.,* 493 F.Supp. 621 (S.D.N.Y. 1980); *Harris v. VAO Intourist, supra,* 481 F.Supp. 1056. The court itself was sufficiently troubled by its novel interpretation that it also rested its decision upon the third clause of section 1605(a)(2). *See In re Rio Grande Transport, Inc., supra,* 516 F.Supp. at 1162. Although we do not disagree with the *Rio Grande* court's ultimate result, we find the reasoning relied upon by the plaintiff unpersuasive.

■ Surely, Congress did not intend the FSIA "to open the floodgates to any controversy around the world, against any foreign entity 'doing business' in the United States." *Vencedora Oceanica Navigacion, S.A. v. Compagnie Nationale Algerienne de Navigation, supra,* 730 F.2d at 202; *see also* Jurisdiction of U.S. Courts in Suits Against Foreign States: Hearings Before the Subcomm. on Administrative Law and Governmental Relations of the House Comm. on the Judiciary on H.R.

11315, 94th Cong., 2d Sess. 31 (1976) (statement of Brunon A. Ristau, Chief of the Foreign Litigation Section of the Civil Division of the Justice Department) (the bill was designed to confer jurisdiction only over those disputes having a relation to the United States). Rather, Congress sought to harmonize two competing principles. On one hand, it wanted to further the very purpose of sovereign immunity—the fostering of harmonious relations between nations. On the other hand, Congress sought to provide a forum for persons aggrieved by foreign nations in ordinary legal disputes. House Reports at 6605. Congress struck the balance by conferring a general grant of immunity upon foreign states and then carving out specific exceptions to that immunity. House Reports at 6616. Thus, the FSIA limits the exercise of jurisdiction over foreign states, *Harris v. VAO Intourist,* 481 F.Supp. 1056, 1059 (E.D.N.Y.1979), to those instances in which the propriety of asserting jurisdiction outweighs the possibility of a harmful impact upon foreign relations. This case is not such an instance. To conclude otherwise would be to strain the language of the Act, ignore its legislative history and frustrate Congressional intent. Accordingly, we hold that this action is not "based upon" the commercial shipping activities carried on in the United States by SCI.

**2. Section 1605(b)**

■ The plaintiff next argues that section 1605(b) provides a basis for exercising jurisdiction. That section states that immunity will not extend to admiralty actions brought to enforce maritime liens against vessels of foreign states where the lien is based upon the commercial activity of that foreign state. A further prerequisite to the assertion of jurisdiction under section 1605 is that service be made upon "the person, or his agent, having possession of the vessel," 28 U.S.C. § 1605(b)(1) (1982), and upon the foreign state or instrumental-

---

**7.** We have found no case decided in the four years since *Rio Grande* that has relied upon the

reasoning advanced by the plaintiff.

ity, 28 U.S.C. § 1605(b)(2) (1982). Castillo contends that the service upon SCI's general agents in New York is sufficient under section 1605(b)(1) and that section 1605(b) is applicable despite the vessel's continued absence from this forum. These contentions are wholly without merit.

Section 1605(b) provides a substitute for the usual *in rem* proceeding to enforce a maritime lien. *China National Chemical Import & Export Corp. v. M/V Hualaihue, supra,* 504 F.Supp. at 689 & n. 1. The notice requirements replace the conventional requirement that attachment of the foreign vessel precede the exercise of jurisdiction. *Jet Line Services, Inc. v. M/V Marsa El Harigo,* 462 F.Supp. 1165, 1174 (D.Md. 1978). Once service has been made, the suit is deemed an *in personam* claim limited to the value of the vessel. 28 U.S.C. § 1605(b) (1982).

Under this section, service must be made on the master of the ship or his second in command, House Reports at 6620. Service on the general agent of the corporate owner is insufficient. Moreover, although Congress has changed the procedures for obtaining jurisdiction, it has not altered the fundamental requirement that the ship be present in the forum when service is effected. The defective service and the vessel's absence from the forum defeat the plaintiff's claim under the Act.[8] Thus, section 1605(b) does not provide a basis for exercising jurisdiction over the defendant.

## II. *Forum Non Conveniens*

 Even if we were to conclude that the FSIA sanctions the exercise of jurisdiction in this case, we would decline to do so because of the doctrine of *forum non conveniens.* The FSIA has not altered that doctrine, *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 490 n. 15, 103 S.Ct. 1962, 1970 n. 15, 76 L.Ed.2d 81 (1983), under which courts have the discretionary power to decline to exercise jurisdiction when a suit would be more appropriately tried elsewhere. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). In applying the doctrine, courts weigh two factors, the parties' convenience and the forum's interests. *Id.* at 508, 67 S.Ct. at 843. They consider the availability of compulsory process for unwilling witnesses, the cost of obtaining witnesses, the ease of access to sources of proof, the relation of the litigation to the forum, and the court's familiarity with the applicable laws. *Id.* at 508–09, 67 S.Ct. at 843. That this is an action in admiralty does not alter those considerations. Nor does the fact that a plaintiff can expect a larger verdict in American courts. This would be true even if the plaintiff was an American citizen. *Alcoa S.S. Co. v. M/V Nordic Regent,* 654 F.2d 147 (2d Cir.1981) (en banc).

Turning to the facts of this case, it is clear that New York is an inconvenient forum. SCI is a foreign corporation whose witnesses, the crewmen aboard the vessel, are Indian citizens. Castillo is a citizen of the Dominican Republic and his witnesses are located there. Not one witness for either side resides in the United States and all are outside the reach of this Court's compulsory process power. The laws of the Dominican Republic would, in all likelihood, govern this action. Moreover, not one act connected with this lawsuit occurred here. In sum, this litigation has no connection to New York and New York has no interest in this litigation. This action should be dismissed on grounds of *forum non conveniens.*

The plaintiff contends that this Court cannot dismiss the action on *forum non conveniens* grounds because New York is his only available forum. The plaintiff had a most convenient forum, the Dominican Republic. But, through his own inaction,

---

**8.** Our analysis precludes the need for considering section 1605(b)(2) in this context. *See supra* note 2.

**504**

he lost access to it. He let the Dominican Republic's six-month statute of limitations pass and has lost his remedy there, as well as in India, which presumably would follow the Dominican Republic's statute. It would be a strange world if a litigant could "bootstrap" himself into a New York court by missing the statute of limitations in the proper forum.

*In re Air Crash Disaster Near Bombay,* 531 F.Supp. 1175 (W.D.Wash.1982), is inapposite. In that case, a number of Indian citizens brought wrongful death actions against United States manufacturers of component parts of an aircraft that had crashed in India. The plaintiffs had instituted their suit within the time limits prescribed by the Indian statute of limitations. By the time the court decided the *forum non conveniens* issue, the Indian statute of limitations had run. The court recognized that *forum non conveniens* would normally apply, even though the defendants were American citizens and the product had been manufactured in this country. Nevertheless, the court declined to dismiss the action because the plaintiffs no longer had an alternative forum for their claims since, under prevailing Indian law, the limitations period could not be waived by the defendant. Unlike the plaintiffs in *In re Air Crash Disaster Near Bombay,* Castillo did not file suit within the time limitations imposed by the Dominican Republic. Had he done so, dismissal here would be conditioned on the defendant not raising a limitations defense to a new action filed promptly in the Dominican Republic. Therefore, we conclude that the doctrine of *forum non conveniens* is both applicable and appropriate in this case. Were we possessed with jurisdiction, we would, nonetheless, dismiss this action.

### III. *Conclusion*

The defendant's motion to dismiss this action is granted. The Clerk will enter judgment accordingly.

SO ORDERED.