**Larry BARNETT, Individually and next friend of Michael Barnett and Shani Barnett, Minors, Lynn Barnett and Rosalie Pechter, Plaintiffs,**

v.

**IBERIA AIR LINES OF SPAIN a Spanish corporation, Defendant.**

**No. 85 C 10265.**

United States District Court, N.D. Illinois, E.D.

March 31, 1987.

---

Harvey J. Barnett, Ira J. Bornstein, Michael S. Blazer, Harvey J. Barnett & Assoc., Chicago, Ill., for plaintiffs.

Catherine E. Tinker, Conklin & Adler, Chicago, Ill., J. Robert Geiman, Robert A. Seidel, W. Mary Stowell, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

On December 22, 1984 plaintiffs departed from New York to Madrid, Spain abroad Trans World Airlines ("TWA") Flight No. 904. The flight arrived in Madrid on December 23rd at 9:12 a.m. Plaintiffs then went to the Iberia Air Lines ticket counter for their scheduled Iberia Flight No. 119 which was to depart at 10:55 a.m. for Arrecife, one of the Spanish Canary Islands. The ticket agent denied boarding to plaintiffs because they did not have their luggage with them.

Plaintiffs then went to get their bags from TWA and found that one bag was missing. Plaintiffs thereupon went back to the Iberia ticket agent, who still refused to issue them boarding passes until plaintiffs filed a claim for the lost baggage. Unfortunately, the claim line formed elsewhere, and so plaintiffs had to leave the Iberia ticket counter and go to the TWA claim desk. Upon arriving at the TWA claim desk, plaintiffs concluded this line was too long so they went back to the Iberia ticket agent stating that they would file the claim form later. The ticket agent then informed plaintiffs that Flight No. 119 was full and plaintiffs would have to stand by to see if any seats opened up. However, unknown to the ticket agent, there were at least five vacant seats on Flight No. 119 at the time the ticket agent refused boarding to plaintiffs. In any event, as a result of the confusion, plaintiffs missed their flight to Arrecife. Because TWA personnel were unable to get reservations for plaintiffs to Arrecife until four days later, at TWA's suggestion plaintiffs went to Grand Canary instead of Arrecife, on December 24, 1984. Unfortunately, plaintiffs did not like their accommodations at Grand Canary and returned home earlier than planned, sick with colds, and distraught because of their ruined vacation.

Plaintiffs have sued both TWA and Iberia. Count I seeks damages against both defendants under § 404b of the Federal Aviation Act. Counts II and III are common law counts for breach of contract and negligence respectively, and Count IV asks that punitive damages be assessed against Iberia. Pursuant to a stipulation to dismiss, TWA was dismissed as a party to this action on September 12, 1986. The matter is now before the court on Iberia's motion for summary judgment. In its motion, Ibe-

ria argues that, because it is a "foreign state" within the meaning of the Foreign Sovereign Immunities Act of 1976 (the "Immunities Act"), 28 U.S.C. § 1602 *et seq.*, and as such is immune from suit for the acts complained of in the complaint, the court lacks subject matter jurisdiction.

In the alternative, Iberia argues that even if this court does have subject matter jurisdiction, the complaint must be dismissed as none of plaintiffs' claims are based on the Warsaw Convention, which provides the exclusive remedy for the conduct of which plaintiffs complain. For the reasons which follow, the court agrees that it lacks subject matter jurisdiction and therefore grants the motion for summary judgment. Since the court is without jurisdiction over this action it will not address defendant's alternative argument premised upon the Warsaw Convention.

■ In a previous ruling in this case, it has been determined that Iberia is a "foreign state," as that term is defined in 28 U.S.C. § 1603(a) and (b). *See* Memorandum Opinion and Order, April 17, 1986 (Decker, J.). Thus, Iberia is entitled to immunity, and this court is without subject jurisdiction over this action, unless one of the statutory exceptions to immunity applies.[1]

In its motion for summary judgment Iberia focuses only upon whether any of the exceptions in § 1605(a)(2) of the Immunity Act applies. Section 1605(a)(2) contains three exceptions to immunity and reads in relevant part as follows:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

. . . . .

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state [clause 1]; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere [clause 2]; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States [clause 3].

Despite plaintiffs' allegation in their complaint that the acts of Iberia in Madrid had a "direct effect" in the United States, which allegation suggests reliance on the clause 3 exception, in their responsive brief plaintiffs do not argue that clause 3 applies to this case. Rather, plaintiffs contend that their claim is excepted from the sovereign immunity defense by reason of either clause 1, 2, or both. Thus, the court will express no view upon the applicability of clause 3, but will decide only whether either clause 1 or clause 2 bar Iberia's sovereign immunity defense.

**I**

■ Judicial interpretation of clause 1 has not been consistent despite Congress' intent to promote uniformity in decision making with respect to questions of sovereign immunity. *Vencerdora Oceanica Navigacion v. Compagnie Nationale Algerienne de Navagation*, 730 F.2d 195, 199 (5th Cir.1984). In *Vencerdora* the Fifth Circuit divided the tests that courts have applied into four categories; those categories are: (1) a "literal" approach; (2) a "nexus" approach; (3) a "bifurcated literal and nexus approach"; and (4) a "doing business" approach. *Id.* at 200.

The first category, that using a literal approach, requires that the cause of action

---

**1.** A federal district court has "original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in [28 U.S.C. § 1603(a)] as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under [28 U.S.C. §§ 1605–1607], or under any applicable international agreement." 28 U.S.C. § 1330(a). Although plaintiff has alleged pendent and diversity jurisdiction, it is

well settled that the Immunities Act provides the exclusive basis of jurisdiction of a district court over an action against a foreign state. *Tigchon v. Island of Jamaica*, 591 F.Supp. 765, 766 (W.D. Mich.1984). As a result, plaintiffs' assertion of diversity and pendent jurisdiction will not save their complaint from dismissal if the court is without jurisdiction pursuant to the Immunities Act.

be directly "based upon" the foreign state's commercial activity in the United States; this approach has not gained wide acceptance and has been rejected by the circuit courts having occasion to review it. *See, Id.* citing *Sugarman v. Aeromexico, Inc.*, 626 F.2d 270 (3d Cir.1980) and *Gemini Shipping v. Foreign Trade Organization for Chemical & Foodstuffs*, 647 F.2d 317, 319 (2d Cir.1981).

The "bifurcated literal and nexus" approach requires that the plaintiff show either a direct causal connection between the foreign state's commercial activity in the United States and the acts which give rise to his claims, or that the commercial activity is an element of the cause of action under the substantive law governing the claim. *Id.* at 200.

The "doing business" test is the most expansive test and requires only that the foreign sovereign conduct a regular course of business activity in the United States; there is no requirement that the particular business transaction or acts giving rise to the cause of action be connected to the United States. *Id.* at 201. This test, which appears to be the traditional doing business test used in some states' long-arm statutes, has been rejected by the majority of courts. *See Castillo v. Shipping Corp. of India*, 606 F.Supp. 497, 502 (S.D.N.Y.1985).

The test adopted by the Fifth Circuit in *Vencerdora* is the "nexus" approach. A court following this approach, looks to see whether there is a connection between the foreign defendant's commercial activity in the United States and the acts giving rise to the plaintiff's claims. *Id.* at 200. This test has also been employed by the Third Circuit in *Sugarman v. Aeromexico, Inc.*, 626 F.2d 270 (3d Cir.1980). A number of district courts have also applied the nexus approach, *see e.g., Tigchon v. Island of Jamaica*, 591 F.Supp. 765 (W.D.Mich.1984); *Gibbons v. Udaras na Gaeltachta*, 549 F.Supp. 1094 (S.D.N.Y.1982); *Verlinden, B.V. v. Central Bank of Nigeria*, 488 F.Supp. 1284 (S.D.N.Y.1980); *Harris v. VAO Intourist, Moscow*, 481 F.Supp. 1056

(E.D.N.Y.1979).[2] However, the formulation of the degree of connection required between the commercial activity in the United States and the acts giving rise to the cause of action has not been uniform; *Compare Tigchon*, 591 F.Supp. at 768 (there must be a "direct" connection between the commercial activity and the acts complained of) *with Verlinden*, 488 F.Supp. at 1295–96 (there must be a "close connection").

This court too thinks that the nexus approach provides the superior interpretation of the first clause of § 1605(a)(2). The literal approach requires that the act complained of occur in the United States, a requirement which seems at odds with Congress' intent in drafting the statute. 730 F.2d at 202, *citing Gemini Shipping v. Foreign Trade Organization for Chemicals & Foodstuffs*, 647 F.2d 317, 319 (2d Cir.1981). The "doing business" test focuses upon the connection between the foreign defendant and the United States, while requiring no connection between the cause of action and the United States; this too seems contrary to congressional intent. *Id.* Finally, there seems to be nothing in the legislative history to support as tight a connection between the cause of action and the United States as required under the "bifurcated literal-nexus" test. Thus, this court shall adopt the nexus test in this case.

 Defendant argues that even though it has operations and offices in the United States, and thus carries on "commercial activities" within the meaning of § 1605 of the Immunities Act, these activities are not connected to Iberia's acts at the Madrid airport which gave rise to plaintiffs' claims. Plaintiffs counter that, the activity described by Iberia in its brief is not the relevant commercial activity. Rather, TWA's Chicago sale to plaintiffs of tickets for Iberia's Flight No. 119 constitutes the commercial activity that is connected to defendant's failure to board plaintiffs in Madrid. This activity of TWA is attributable to Iberia, plaintiffs argue, because un-

---

**2.** In dictum in *Magnus Electronics, Inc. v. Argentine Republic*, 637 F.Supp. 487, 493 & n. 10

(N.D.Ill.1986), Judge Shadur of this district also expressed his preference for the nexus test.

der an agreement among international air carriers (Resolution 780), an airline which issues tickets for flights on another airline acts merely as the agent for the carrying airline. Thus, according to plaintiffs, TWA was acting as Iberia's agent when TWA sold them the tickets. The contract which forms the basis of this action, the argument goes, was formed in Chicago when the plaintiffs purchased their tickets. Therefore, there is a sufficient connection between the acts of Iberia in Madrid and Iberia's commercial transaction with plaintiffs in Chicago to meet the requirements of clause 1.[3]

The court thinks that the necessary nexus between the acts of Iberia in Madrid and the commercial activities of Iberia in the United States is missing. While the activities of TWA as agent for Iberia might be enough to confer jurisdiction over Iberia under a "doing business" test, the court believes that the acts of an agent are insufficient under the nexus approach. *See, Harris v. VAO Intourist, Moscow,* 481 F.Supp. at 1060–61 (rejecting an agent-principal relationship as sufficient to establish jurisdiction over the foreign principal under a nexus approach).

Plaintiff places major reliance upon *Sugarman v. Aeromexico, Inc.,* 626 F.2d 270 (3d Cir.1980). In that case the plaintiff alleged that an extended delay at the airport in Mexico of his scheduled flight back to Newark caused him to suffer physical and emotional damage. The court found there was a sufficient nexus between the plaintiff's claims and Aeromexico's U.S. commercial activity because the delayed flight that was bound for New York City was the return portion of a round-trip flight, and the plaintiff had purchased the round-trip ticket from a travel agent in Newark.

This court, however, finds *Sugarman* distinguishable. The delayed flight, as the *Sugarman* court noted, was flying to the United States and was part of a round-trip flight between Mexico and the United States. Thus, it could be argued that the plaintiff's claim based on the delay grew directly out of Aeromexico's commercial contacts with the United States. In contrast, the delayed flight about which plaintiffs complain was from Madrid to another point in Spain. Moreover, the relevant commercial activity in *Sugarman* (the flights between Mexico and the United States) was not conducted through an agent; in contrast here plaintiffs seek to predicate jurisdiction on the commercial activities of Iberia's agent, not on any commercial activities of Iberia itself. Therefore, the court finds that *Sugarman* does not apply here.

## II

The first clause does not apply to this case, and so the court turns to the second clause. As noted earlier, clause 2 confers jurisdiction on an American court when the cause of action is based "upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere." 28 U.S.C. § 1605(a)(2). In its brief in support of its motion for summary judgment, Iberia gave only passing attention to clause 2, believing as it did that the plain language of the clause precluded its application to the facts of this case. As Iberia argues, plaintiffs' cause of action is "based upon" acts occurring in Madrid, and therefore clause 2 on its face is inapplicable.

Plaintiffs, in turn, argue that clause 2 must apply because the contract between them and Iberia was formed in the United States (presumably because plaintiffs purchased their tickets in Chicago from TWA). But plaintiffs have misread the statute. Even if plaintiffs were correct that a contract between them and Iberia was formed in Chicago, that is not enough to bring the case within the language of clause 2. The formation of the contract might be the relevant commercial activity for purposes of clause 2, but the acts which form the

---

**3.** Plaintiffs state that the issue of whether TWA was acting as Iberia's agent is a disputed issue of material fact, which dispute precludes the entry of summary judgment for defendant. But

Iberia in its reply does not dispute that TWA acted as its agent; rather Iberia argues that this is still not enough to give this court jurisdiction over it.

basis of plaintiffs' claims (even their breach of contract claim) all occurred in Spain. Clause 2 requires that the acts giving rise to the cause of action occur in the United States; thus, that clause plainly does not apply here.

For all the reasons discussed above the court finds that neither of the exceptions plaintiffs rely upon in § 1605(a)(2) of the Sovereign Immunities Act applies; hence, this court is without subject matter jurisdiction over this action. Defendant Iberia's motion for summary judgment is therefore granted and this action is dismissed.