In re COMPANIA NAVIERA JOANNA S.A., as owner, and MSC Mediterranean Shipping Company S.A, as bareboat charterer of the M/V MSC Joanna, for exoneration from or limitation of liability.

C/A No. 2:07–CV–001531–DCN.

United States District Court,
D. South Carolina,
Charleston Division.

Nov. 1, 2007.

Douglas Manning Muller, Moore and Van Allen, Charleston, SC, for Compania Naviera Joanna S.A., as owner.

Adriane Malanos Belto, Gordon D. Schreck, Buist Moore Smythe and McGee, Charleston, SC, for MSC Mediterranean Shipping Company S.A, as bareboat charterer of the M/V MSC Joanna, for exoneration from or limitation of liability.

## ORDER and OPINION

DAVID C. NORTON, Chief Judge.

On June 1, 2007, Compania Naviera Joanna, S.A. and MSC Mediterranean Shipping Co., S.A. ("petitioners") filed this limitation action pursuant to Supplemental Rule F, seeking exoneration or to limit its liability for claims arising from a collision that occurred between the MSC JOANNA,

a container vessel, and the W.D. FAIR-WAY, a dredge owned and operated by claimants, in Chinese territorial waters near Tianjin, China. Kininklijke Boskalis Westminster NV, Westminster International BV, and Boskalis International BV ("claimants") have filed a claim for damages of approximately $326 million. This matter is before the court on three motions: (1) petitioners' motion to dismiss on *forum non conveniens* grounds; (2) claimants' motion to transfer venue to the Southern District of Texas; and (3) claimants' motion to lift the restraining order and to stay the limitation proceeding. For the reasons stated below, the court grants petitioners' motion to dismiss on *forum non conveniens* grounds, concluding that China provides an available, more convenient forum. Claimants' motions to transfer venue and to stay the limitation proceeding are accordingly denied.

## I. BACKGROUND

On March 8, 2007, a collision occurred between the MSC JOANNA and the W.D. FAIRWAY. It is undisputed that the collision occurred in the territorial waters of the People's Republic of China, in an area under the jurisdiction of the Tianjin Admiralty Court. The W.D. FAIRWAY, which was the world's largest suction hopper dredge, sustained significant damage.

The MSC JOANNA is owned by Compania Naviera Joanna, S. A., a Panamanian corporation. The MSC JOANNA was and is registered in Panama. MSC Mediterranean Shipping Company, which is organized under the laws of Switzerland, was the bareboat charterer of the MSC JOANNA at the time of the collision and continues to charter the vessel. According to petitioners, the MSC JOANNA operates exclusively between China and Europe, and has never called at a United States port. At the time of the collision, the MSC JOANNA's crew consisted of Italian, Croatian, Indonesian, Polish, and Yugoslavian nationals.

The W.D. FAIRWAY is owned by Westminster of the Netherlands, a Dutch corporation. The W.D. FAIRWAY was and is registered in the Netherlands. The vessel was chartered to Tianjin Dredging Company, a Chinese corporation, although claimants contend the charter was a prerequisite to dredging in Chinese waters and that the Tianjin Dredging Company was not involved in the vessel's navigation or operation. As with the MSC JOANNA, the W.D. FAIRWAY'S crew had no United States citizens. Its crew consisted of Dutch, Lithuanian, Swedish, and Filipino nationals.

Following the collision, a Chinese governmental agency (the Yantai Salvage Bureau) conducted salvage operations on the W.D. FAIRWAY in the ports of Tianjin and Qinhuangdao, China. Temporary repairs were made to the MSC JOANNA at the Xingang Shipyard in Tianjin and permanent repairs were made by Samsung Heavy Industries in South Korea. The Maritime Safety Administration, a Chinese agency that petitioners assert is similar to the United States Coast Guard, conducted an investigation into the collision. According to an affidavit submitted by petitioners, the Maritime Safety Administration's investigation included interviews with the crews of both vessels and the harbor pilots, review and retention of vessel records, the taking of photographs, obtaining records on weather and sea conditions, and obtaining records of radar and VHF radio data. Pet. Mem. Supp. Ex. 1 ¶¶ 5–7.

On March 12, 2007, Westminster NV applied to the Tianjin Admiralty Court for an evidence preservation order, which the court apparently granted. The Tianjin Admiralty Court, upon the application of the Tianjin Dredging Company, arrested the MSC JOANNA on March 16, 2007.

Petitioners instituted a limitation action in the Tianjin Admiralty Court on March 29, 2007. That court established a claims deadline of June 30, 2007. In May 2007, claimants instituted Rule B attachment proceedings against four other MSC-chartered vessels in four different United States district courts, including the District of South Carolina. Petitioners then brought this Rule F limitation action as a defensive measure to prevent further attachments, posted in excess of $110 million in security, and reserved the right to move for dismissal on *forum non conveniens* grounds. Claimants have filed an answer and have claimed damages of approximately $326 million.

## II. DISCUSSION

### A. Forum Non Conveniens in the Limitation Context

█ As an initial matter, this case's procedural posture does not prevent petitioners from moving to dismiss on *forum non conveniens* grounds. In *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the Supreme Court considered whether the petitioner in a maritime limitation action could move to enforce a forum-selection clause that selected the United Kingdom as the appropriate forum. The Court concluded that the lower courts erred in refusing to enforce the clause. In doing so, the Court noted that it was unconcerned by the fact that the movant was also the party who filed the limitation action. *See id.* at 19–20, 92 S.Ct. 1907. The Court viewed the limitation action as "purely a defense measure" that did not interfere with the petitioner's ability to move for the enforcement of the forum selection clause. *Id.* at 19, 92 S.Ct. 1907.

The Southern District of Texas reached a similar conclusion when the petitioner in a limitation action sought to dismiss on *forum non conveniens* grounds. *See In re*

*Geophysical Serv., Inc.*, 590 F.Supp. 1346 (S.D.Tex.1984). The claimants there, like the claimants in this case, argued that a petitioner could not make such a motion after invoking the limitation procedure. *See id.* at 1354. The court, citing the Supreme Court's decision in *Bremen,* held that the "[p]etitioners invoked the limitation action as a defensive measure, in response to the many lawsuits filed against them in numerous federal and state courts in Texas." *Id.* The district court further reasoned:

> Petitioners had no other prudent alternative when faced with Claimants' efforts to litigate the same controversy in numerous courts in Texas. Indeed, certain of the Claimants successfully blocked Petitioners' previous efforts to remove some of the actions filed in Texas state court into federal court, thus precluding consolidation of the suits in one federal court. Lacking any other procedural mechanism to consolidate all the claims arising from this controversy, Petitioners elected to exercise their right to invoke a limitation of liability action in order to consolidate all claims and dispose of them in one action.

*Id.* at 1355.

In opposing the instant motion, claimants refer to the Fifth Circuit's opinion in *Karim v. Finch Shipping Co.*, 265 F.3d 258 (5th Cir.2001). The vessel owner in *Karim* filed a limitation action and then moved to dismiss, arguing there was no personal jurisdiction over the vessel owner in addition to asserting res judicata and *forum non conveniens* grounds. *Id.* at 262. The district court denied the motions and, on appeal, the Fifth Circuit considered whether the vessel owner could raise a personal jurisdiction defense after it instituted the limitation action. *See id.* at 262, 265–66. The Fifth Circuit held that the vessel owner could not do so, reasoning

that it made little sense to allow a party who voluntarily submitted to a court's jurisdiction to later argue the court had no personal jurisdiction over it. *See id.* at 265–66. The shipowner argued that the Supreme Court's decision in *Bremen* supported its position, but the Fifth Circuit distinguished *Bremen* on two grounds. *Id.* at 266. First, the court of appeals concluded that *Bremen* did not hold that a party who initiates a limitation action is not subject to the jurisdiction of the United States court. *Id.* at 266–67. Second, the question in *Bremen* was not whether the court had jurisdiction, but whether the court should have exercised that jurisdiction. *Id.* at 267.

Notably, *Karim* addressed whether the district court erred in denying the shipowner's motion to dismiss on *forum non conveniens* grounds. *See id.* at 268. The Fifth Circuit considered such a motion to be appropriate, *see id.* at 268–69, even noting that "the limitation issue is ... to be taken as yet another factor to consider in the well-established *Gulf Oil/Piper Aircraft* framework." *Id.* at 269. Although the Fifth Circuit concluded the district court did not abuse its discretion in denying the motion to dismiss, its analysis makes clear that a party who initiates a limitation action may also move to dismiss on the basis of *forum non conveniens*.

### B. Application of Forum Non Conveniens in this Case

■■■■ Under the common law doctrine of *forum non conveniens*, a district court will dismiss an action only if transfer to the proper alternative forum cannot be accomplished via 28 U.S.C. § 1404. *See* Wright and Miller, 14D *Federal Practice & Procedure* § 3828. at 614–623 (2007). Because a district court can transfer a case to any other district under § 1404, the traditional *forum non conveniens* doctrine applies when the more convenient, alternative forum is in another country. *Amer.*

*Dredging Co. v. Miller*, 510 U.S. 443, 449 n. 2, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994). In summarizing the federal doctrine of *forum non conveniens*, the Supreme Court has stated:

> [W]hen an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would establish oppressiveness and vexation to the defendant out of all proportion to the plaintiff's convenience, or when the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems, the court may, in the exercise of its sound discretion, dismiss the case.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (internal quotation marks and alterations omitted) (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947)). Thus, both the private interests of the litigants or the court's difficulties in hearing the case may provide grounds for dismissal on *forum non conveniens* grounds.

Courts traditionally analyze *forum non conveniens* issues using a two-step approach. First, the court must consider whether an alternative forum is available. *See Piper*, 454 U.S. at 254 n. 22, 102 S.Ct. 252; *Gulf Oil*, 330 U.S. at 506, 67 S.Ct. 839. If the alternative forum is available, the court must apply various factors to determine whether the private litigants' interests and the public interest require dismissal. *See Piper*, 454 U.S. at 257–61, 102 S.Ct. 252.

### 1. Whether China is an "Available" Forum

■■■■ The *forum non conveniens* doctrine necessarily presumes that an adequate alternative forum is available. *See Gulf Oil*, 330 U.S. at 506, 67 S.Ct. 839. The alternative forum is ordinarily avail-

able if the defendant is "'amenable to process' in the other jurisdiction." *Piper,* 454 U.S. at 254 n. 22, 102 S.Ct. 252 (quoting *Gulf Oil,* 330 U.S. at 506–07, 67 S.Ct. 839). However, circuit courts of appeals, including the Fourth Circuit, have interpreted the availability requirement as precluding dismissal on *forum non conveniens* grounds when the statute of limitations in the alternative forum has expired. *See Bank of Credit & Commerce Int'l (OVERSEAS) Ltd. v. State Bank of Pakistan,* 273 F.3d 241, 246 (2d Cir.2001); *Mercier v. Sheraton Int'l, Inc.,* 935 F.2d 419, 426 n. 8 (1st Cir.1991); *Kontoulas v. A.H. Robins Co.,* 745 F.2d 312, 316 (4th Cir.1984). Claimants assert the Chinese courts are unavailable because the statute of limitations for filing a claim expired in late June 2007.

Although most courts accept the general rule that dismissal is inappropriate if the statute of limitations in the alternative forum has expired, the three courts to address the issue have carved an exception where the statute of limitations expired because of the non-movant's purposeful delay or dilatory behavior. *In re Bridgestone/Firestone, Inc.,* 420 F.3d 702, 703 (7th Cir.2005), involved a products liability action asserted by a Mexican national against Bridgestone/Firestone, a tire manufacturer, for personal injuries allegedly caused by a defective tire. *Id.* at 703. The district court dismissed the action on *forum non conveniens* grounds, reasoning that Mexico was an available, adequate, and more convenient forum. *See id.* The Seventh Circuit approved of the district court's disposition but acknowledged that Mexican courts had apparently refused to hear the case while the appeal was pending, thereby making the Mexican forum unavailable. *Id.* at 705. The Seventh Circuit noted that it had "serious misgivings about the plaintiffs' actions," particularly

because it appeared the plaintiffs filed suit in Mexico in a manner aimed at foreclosing those courts as an available forum. *Id.* at 706.

Because it did not have an adequate record, the Seventh Circuit remanded. *See id.* at 706–07. The Seventh Circuit stated that if the plaintiffs "acted in good faith" with respect to its filings in Mexican courts, then the alternative forum would be unavailable for *non conveniens* purposes and dismissal would not be appropriate. *Id.* at 707. However, if the district court determined that the plaintiffs "did not act in good faith and manipulated the dismissal of their case in Mexico, the district court should regard itself as free once again to dismiss the complaint." *Id.* In sum, the Seventh Circuit held that "for purposes of U.S. law a forum may not become unavailable by way of fraud." *Id.* On remand, the district court held that the plaintiffs had acted in bad faith in obtaining the Mexican court ruling and again held that dismissal was appropriate. *See In re Bridgestone/Firestone, Inc.,* 470 F.Supp.2d 917, 929 (S.D.Ind.2006).[1]

The Fifth Circuit addressed the effect dilatory conduct may have on the *forum non conveniens* analysis in *Veba–Chemie A.G. v. M/V Getafix,* 711 F.2d 1243 (5th Cir.1983). The court discussed *Gulf Oil's* alternative forum requirement, stating that an alternative forum must "be available at the time of dismissal so that [the] plaintiff can pursue his action in what has been determined to be a substantially more convenient forum." *Id.* at 1248. If an alternative forum is not available, the court reasoned, the *Gulf Oil* analysis will strongly oppose dismissal. *Id.* However, as the court stated in a footnote, "Perhaps if the plaintiff's plight is of his own making—for instance, if the alternative forum was no longer available at the time of

---

1. It appears there was no appeal of the district court's decision on remand.

dismissal as a result of the deliberate choice of an inconvenient forum—the court would be permitted to disregard this consideration and dismiss." *Id.* at 1248 n. 10. The Fifth Circuit specifically noted that the Supreme Court in *Gulf Oil* was sensitive to a plaintiff's attempts to vex, harass, or oppress the defendant by virtue of his choice of forum. *Id.* (citing *Gilbert,* 330 U.S. at 508, 67 S.Ct. 839). If a plaintiff (or other party opposed to *forum non conveniens* dismissal) purposefully foreclosed the availability of an alternative forum, that conduct would certainly be in the realm of vexation, harassment, or oppression.

In *Castillo v. Shipping Corp. of India,* 606 F.Supp. 497 (S.D.N.Y.1985), the district court dismissed on *forum non conveniens* grounds because the plaintiff, through his own inaction, lost access to the most convenient forum. The plaintiff in *Castillo,* like claimants in this case, argued that the court could not dismiss the action on *forum non conveniens* grounds because New York was the only available forum. *Id.* The court rejected this argument, explaining:

> The plaintiff had a most convenient forum, the Dominican Republic. But, through his own inaction, he lost access to it. He let the Dominican Republic's six-month statute of limitations pass and has lost his remedy there, as well as in India, which presumably would follow the Dominican Republic's statute. *It would be a strange world if a litigant could "bootstrap" himself into a New York court by missing the statute of limitations in the proper forum.*

*Id.* at 503–04 (emphasis added). That is exactly what claimants seek to do in this case.

■ A party should not be allowed to assert the unavailability of an alternative forum when the unavailability is a product of its own purposeful conduct. The Chinese maritime court established a June 30, 2007, deadline for filing claims in the limitation action. *See* Pl. Mem. Supp. Mot. Dismiss Ex. 2. At the hearing, claimants' counsel acknowledged that they deliberately chose "not to participate in China." [2] Hrg. Tr. at 32. Thus, the only reason the Chinese forum is not available in this case is because claimants knowingly and purposefully opted to miss the deadline for filing their claims in that forum. The dilatory nature of claimants' actions is particularly apparent because they were on notice long before the Chinese court's deadline passed that petitioners were going to move for dismissal on *forum non conveniens* grounds. [3] *See* Verified Comp. ¶ 20. By their conduct, claimants seek to artificially establish this court as the most convenient available forum—an impermissible outcome under the persuasive reasoning of *Bridgestone/Firestone, Veba–Chemie,* and *Castillo v. Shipping.*

■ To be "available," the alternative forum must also offer an adequate remedy, meaning that the remedy cannot be "clearly unsatisfactory." *Piper,* 454 U.S. at 254 n. 22, 102 S.Ct. 252 The Supreme Court has explained that a remedy is clearly unsatisfactory if "the alternative forum does not permit litigation of the subject matter of the dispute." *Id.* However, the

**2.** At the hearing, the court asked whether claimants "made a reasoned decision after being notified that there was a limitation of liability proceeding instituted in the courts of China not to participate and let the statute of limitations run." Claimants' counsel responded, "That's correct, Your Honor." Hrg. Tr. at 25.

**3.** Petitioners filed the verified complaint on June 1, 2007. Claimants answered on June 15, 2007. Thus, claimants had notice that petitioners were going to move for dismissal on *forum non conveniens* grounds at least fifteen days before the Chinese court's deadline for filing claims expired.

alternative forum is not inadequate simply because that forum will subject the non-movant to an unfavorable change in law or lessen its recovery. *See id.; see also Alcoa S.S. Co., Inc. v. M/V Nordic Regent,* 654 F.2d 147, 159 (2d Cir.1980) (en banc) ("It is abundantly clear, however, that the prospect of a lesser recovery does not justify refusing to dismiss on the ground of *forum non conveniens.* Moreover, it is not at all unfair for [a party] to recover the lesser amount." (internal citations omitted)). The unfavorable change in law or remedy may be considered in the ultimate analysis, but should only be given substantial weight if the "remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper,* 454 U.S. at 254, 102 S.Ct. 252. Claimants assert the remedy offered by the Chinese courts is inadequate for two reasons. First, they claim petitioners' liability under Chinese law is limited to $20 million. Second, claimants contend Chinese law will subordinate their claims to those of third-parties, thereby preventing them from receiving any share of the $20 million limitation fund.

Courts have been reluctant to conclude that dismissal on *forum non conveniens* is inappropriate where the alternative forum offers some remedy, regardless of how unfavorable the change in the substantive law or the potential amount of recovery. *Piper* itself involved an unfavorable change in the substantive law because Scotland did not recognize a cause of action for strict liability in tort. *See Piper,* 454 U.S. at 252, 102 S.Ct. 252. Naturally, a change from strict liability to fault-based liability could have made it significantly harder for the plaintiffs to recover in Scotland, but the Supreme Court still held that dismissal was appropriate. *See id.*

The Fifth Circuit discussed the adequacy requirement in *Gonzalez v. Chrysler Corp.,* 301 F.3d 377 (5th Cir.2002). The defendant moved for dismissal, arguing that Mexico was a more convenient forum. *Id.* at 379. The plaintiff argued, *inter alia,* that Mexico did not offer an adequate remedy because it had a statutory cap on damages that would have limited his recovery to $2,500 in damages for the death of his three-year-old son. *Id.* The Fifth Circuit concluded that the Mexican remedy was not "clearly unsatisfactory," even if the economic realities of the case made it unlikely that the plaintiff would ever file suit there. *Id.* at 381–82. Moreover, the Ninth Circuit has affirmed the dismissal of a suit in favor of a New Zealand forum, even though the plaintiff argued he would recover substantially less for his tort claim because of that country's no-fault accident compensation system. *See Lueck v. Sundstrand Corp.,* 236 F.3d 1137, 1144–45 (9th Cir.2001).

■ Dismissing this action will result in an unfavorable change in the law from claimants' perspective; assuming for the purposes of this order that their potential recovery is limited to only $20 million in China, versus the over $100 million available in this limitation action. Moreover, Chinese law may—at least according to claimants' Chinese law experts—subject claimants to unfavorable priority rules and could subordinate their claims to those of other parties.[4] While that description paints an unrosy picture for claimants, it does not suggest that they are left without a remedy. Moreover, it is difficult to discern a difference between an unfavorable change in priority rules versus a change from strict liability to fault-based liability. Unfavorable priority rules may make it

---

**4.** This issue of priority is hotly disputed by petitioners' Chinese legal experts. The court has been inundated with dueling affidavits

from Chinese lawyers—a harbinger of things to come if this court were to refuse to dismiss this case.

harder for claimants to achieve what they feel is an adequate remedy but does not mean claimants have no remedy at all.[5]

## 2. Whether China Is a More Convenient Forum

[9, 10] The factors enunciated by the Supreme Court in considering whether dismissal on *forum non conveniens* grounds fall into two broad categories. The first category of factors, based on the private interests on the litigants, includes: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) possibility of viewing the premises, if viewing would be appropriate to the action; and (4) all other practical problems that make the trial of a case easy, expeditious, and inexpensive. *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839. The second category of factors, based on the public interest in the litigation, includes: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home, (3) the interest of having the trial of a case in a forum that is at home with the law that must govern the action, (4) the avoidance of unnecessary problems in conflicts of laws, or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper*, 454 U.S. at 241 n. 6, 102 S.Ct. 252. A district court undertaking a *forum non conveniens* inquiry must "consider[ ] all relevant all relevant public and private interest factors." *Id.* at 257, 102 S.Ct. 252.

 Although a plaintiff's choice of forum is typically afforded a "strong presumption" of convenience, the Supreme Court has provided that a foreign plaintiff's choice of a United States forum is entitled to less deference. *See id.* at 255–56, 102 S.Ct. 252 ("When the home forum has been chosen, it is reasonable to assume that this choice of forum is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.") A limitation action presents unique issues of which party "chose" the present forum. Because all the parties are foreign entities, and because the Supreme Court has held that this court should apply less deference to a foreign entity's choice of forum, the foreign identity of all parties in this case makes it unnecessary to determine whose "choice" deserves a presumption of convenience; neither party's choice of this forum is entitled to a favorable presumption.

 The private interest factors support the conclusion that China is the more convenient forum. The events that are subject to this action occurred exclusively in China. It is thus reasonable to assume that there will be more Chinese witnesses than United States witnesses (if any). Moreover, the relevant evidence is much more likely to be found in China. Indeed, Chinese maritime authorities have already conducted an investigation into the incident; the evidence they gathered is in China, Chinese courts would be able to compel the attendance of witnesses located there, it will be less burdensome for those

---

**5.** The Supreme Court stated in *Piper* that the remedy's adequacy should only be given substantial weight if the "remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper*, 454 U.S. at 254, 102 S.Ct. 252. Thus, even if the remedy is found to be clearly inadequate, that finding is not dispositive on the *forum non conveniens* issue. Even if the remedy offered in China is "inadequate," the private and public interest factors favor the alternative forum so strongly that dismissal would nonetheless be appropriate.

witnesses to attend proceedings in China. At the time of the collision, the W.D. FAIRWAY was chartered to a Chinese corporation. Chinese shipyards conducted the initial salvage operations on both vessels. To the extent proximity to the location of the collision will assist the finder-of-fact, that factor naturally supports a conclusion that China is more convenient. Although the court acknowledges that a number of witnesses and other evidence is located in countries other than China, as between the United States and China, the latter has substantially better access to the sources of proof.[6]

The public interest factors also weigh substantially in favor of dismissal. The United States has absolutely no connection to the events giving rise to this action. None of the parties is a United States entity or citizen. Neither vessel was registered in the United States. Neither vessel ever darkened the doorstep of a United States port. No member of either crew was a United States citizen. No United States citizens are fact witnesses. Most, if not all, of the potential witnesses speak a language other than English, requiring a plethora of translators if the case were retained by this court. Any connection this case has with the United States is incredibly minor: *other* vessels chartered by Mediterranean Shipping Co. regularly call on United States ports. To burden an American court with dueling Chinese legal experts and a series of translators interpreting a polyglot of languages, is above and beyond the scope of the fact finder's duty, especially when the events giving rise to this case occurred on the other side of the globe. At bottom, the United States, its court system, and its citizens have little, if any, interest in the resolution of this dispute.

■ The most compelling public interest factor favoring dismissal may be the challenge of applying foreign law. Claimants correctly argue that United States law may govern the limitation aspect of this proceeding. Their argument fails to acknowledge, however, that Chinese law will provide the substantive law of liability. As the Ninth Circuit explained, "The law of liability limitation is different from the law of substantive liability. A law of substantive liability ... creates or defines a party's liability; a law of liability limitation places an upper limit on a party's liability that has been created by a substantive law." *In re Korea Shipping Corp.*, 919 F.2d 601, 602 n. 1 (9th Cir.1990). Under the Supreme Court's decision in *Oceanic Steam Navigation Co. v. Mellor (The Titanic)*, 233 U.S. 718, 34 S.Ct. 754, 58 L.Ed. 1171 (1914), federal courts generally apply United States law as the law of liability limitation. *See id.* at 733, 34 S.Ct. 754. When a collision occurs in another country's territorial waters, however, that country's law establishes the alleged wrongdoer's substantive liability. *See Ishizaki Kisen Co. v. United States*, 510 F.2d 875, 879 (9th Cir.1975); *The Gylfe v. The Trujillo*, 209 F.2d 386, 387 (5th Cir. 1954). There is no dispute in this case that the collision occurred in the territorial waters of the Peoples' Republic of China. Thus, assuming *arguendo* that if United States law governs the limits of petitioners' liability, the court tasked with resolving this dispute will have to determine liability according to Chinese law. Although having to apply foreign law is only one of many factors to consider in the *forum non conveniens* analysis, it is particularly relevant where, as here, the United States has no interest in this controversy.

---

**6.** The fact that claimants took the first step of applying to the Tianjin Admiralty Court for an evidence preservation order highlights the Chinese forum's access to the relevant evidence.

Dismissing this action on *forum non conveniens* grounds is also supported by the recent Supreme Court decision in *Sinochem International Co., Ltd. v. Malaysia International Shipping Co.,* —— U.S. ——, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007). Sinochem, a Chinese corporation, purchased steel coils from Triorient, a United States corporation. Under the sales contract, Triorient would receive payment via a letter of credit by producing a bill of lading demonstrating that the coils had been shipped to China by a certain date. Triorient contracted with Malaysian International, a Maylasian corporation, to transport the coils to China. Alleging that Malaysian International fraudulently backdated the bill of lading, Sinochem instituted an attachment action in China and Malaysian International's vessel was arrested as a result. Malaysian International then brought suit against Sinochem in the Eastern District of Pennsylvania, seeking damages arising from what it considered the wrongful arrest of its vessel in China. Triorient was not a party to any of the actions. *Id.* at 1189–90.

The Supreme Court primarily considered whether a court may address *forum non conveniens* issues before determining whether it has jurisdiction over an action, eventually concluding that jurisdiction may be assessed either before or after ruling on a motion to dismiss on *forum non conveniens* grounds. *See id.* at 1192. However, the Court addressed the substance of the *forum non conveniens* question, concluding it was a "textbook case for immediate *forum non conveniens* dismissal." *Id.* at 1194. The Court briefly elaborated:

> Judicial economy is disserved by continuing litigation in the Eastern District of Pennsylvania given the proceedings long launched in China. And the grava-

men of Malaysia International's complaint—misrepresentations to the Guangzhou Admiralty Court in the course of securing arrest of the vessel in China—is an issue best left for determination by the Chinese courts.

*Id.*

*Sinochem* involved more connections to the United States than the instant case: The events giving rise to the misrepresentations occurred in Pennsylvania (even if the misrepresentations themselves occurred in China) and a United States company was intimately involved in those events. In contrast, the only conclusion to be drawn in this case is that it has no connection to the United States. Even if China is not the most convenient venue among all available fora, it is clear that it has significantly more connections and much more interest in resolving this dispute than does the United States.

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that petitioners' motion to dismiss be **GRANTED** and that this action be **DISMISSED.** It is further **ORDERED** that claimants' motions to transfer venue and to lift the stay be **DENIED.**

**AND IT IS SO ORDERED.**